**Opinion issued March 19, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00813-CV

————————————

**STEVEN STEPTOE AND PATRICIA CARBALLO, Appellants**

**V.**

**JPMORGAN CHASE BANK, N.A., Appellee**

---

**On Appeal from the 61st District Court
Harris County, Texas
Trial Court Case No. 2013-32035**

---

## O P I N I O N

JPMorgan Chase Bank, N.A. (JPMC) filed suit against Steven Steptoe and Patricia Carballo, seeking non-judicial foreclosure on a home-equity loan. Steptoe and Carballo moved for summary judgment on the ground that JPMC's claim was a compulsory counterclaim that should have been brought by JPMC in an earlier

suit.  JPMC responded that its claim fell within an exception to the compulsory counterclaim rule.  It filed a cross motion for summary judgment, asserting that it was entitled to judgment permitting non-judicial foreclosure, as a matter of law.

The trial court granted JPMC's motion for summary judgment and denied that of Steptoe and Carballo.  On appeal, Steptoe and Carballo raise one issue in which they assert that the trial court erred in its ruling on the motions for summary judgment.

We affirm.

## Background

On August 29, 2007, Steven Steptoe entered into a home-equity loan transaction with Chase Bank USA, as permitted by article XVI, section 50(a)(6) of the Texas Constitution.  Steptoe signed a home-equity note, borrowing $184,000 from Chase Bank, and agreeing to make monthly payments.  The note was secured by a lien on real property located at 1908 Taft Street, Houston, Texas.  The lien was evidenced by a home-equity security instrument signed by Steptoe and Patricia Carballo (collectively "Appellants").  Significant in this case, the security instrument contained a power-of-sale provision.

On October 5, 2010, JPMC, as successor to Chase Bank, filed suit in state district court, seeking an order to allow it to proceed against Appellants with an expedited, non-judicial foreclosure of the home-equity loan under Texas Rule of

Civil Procedure 736 (suit referred to hereinafter as "*JPMC I*"). JPMC alleged that Steptoe had failed to make the monthly payments as required under the home-equity loan agreement. JPMC later dismissed the suit when it was determined that notice of default was deficient. JPMC later mailed new notices of default and notices of acceleration to Appellants.

On August 26, 2011, Steptoe filed suit in state district court against JPMC, alleging that the home-equity lien violated Texas Constitution, article XVI, section 50(a)(6) (suit referred to hereinafter as "*Steptoe I*"). JPMC removed the action to federal court. Soon after, JPMC filed a motion for summary judgment. The federal court granted JPMC's motion and signed a take-nothing judgment against Steptoe.

On May 29, 2013, JPMC filed the instant suit against Appellants in state district court, requesting a declaratory judgment (referred to hereinafter as "*JPMC II*"). JPMC sought to establish that it had "a valid and subsisting first lien" on the Taft property securing the loan agreement. JPMC also sought a declaratory judgment, authorizing non-judicial foreclosure of its lien. JPMC asserted that it was entitled to non-judicial foreclosure "pursuant to" (1) article XVI, section 50(a)(6) of the Texas Constitution, (2) section 51.002 of the Texas Property Code, and (3) "the terms of the Loan Agreement." In addition, JPMC requested a writ of possession and attorney's fees.

Appellants answered the suit, asserting a number of affirmative defenses. Among these, Appellants claimed that JPMC had "waived its right to foreclose by failing to file a compulsory counterclaim for judicial and/or non-judicial foreclosure in a prior lawsuit ("*Steptoe I*") involving these same issues."

The parties filed cross-motions for summary judgment. JPMC moved for summary judgment on its claims for non-judicial foreclosure and for attorneys' fees under the terms of the home-equity loan.

In their motion, Appellants asserted that the compulsory counterclaim rule barred JPMC's claims in this suit because the claims should have been brought as a counterclaim in *Steptoe I*. JPMC responded, asserting that an exception to the compulsory counterclaim rule, known as the *Kaspar* rule, applies in secured transaction cases such as this. *See Kaspar v. Keller*, 466 S.W.2d 326, 329 (Tex. Civ. App.—Waco 1971, writ ref'd n.r.e.).

The trial court signed two orders. One order granted JPMC's motion for summary judgment, and the other denied Appellants' motion. This appeal followed in which Appellants raise one issue, asserting that the trial court erred by denying their motion for summary judgment and by granting that of JPMC.

**Standard of Review**

This court reviews an order granting or denying a motion for summary judgment de novo. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253

4

S.W.3d 184, 192 (Tex. 2008). Under the traditional summary judgment standard, the movant has the burden of showing that no genuine issue of material fact exists and that he is entitled to summary judgment as a matter of law. *See Am. Tobacco Co. v. Grinell*, 951 S.W.2d 420, 425 (Tex. 1997).

When both sides move for summary judgment and the trial court grants one motion and denies the other, reviewing courts consider both sides' summary judgment evidence, determine all questions presented, and "render the judgment the trial court should have rendered." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). Each party must carry its own burden to establish entitlement to summary judgment by conclusively proving all the elements of the claim or defense as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

**Analysis**

On appeal, Appellants continue to assert that the compulsory counterclaim rule bars JPMC's foreclosure claim in this suit because JPMC failed to pursue foreclosure as a counterclaim in *Steptoe I*. Appellants acknowledge the exception to the compulsory counterclaim established by the *Kaspar* rule; however, they assert that the rule does not apply to foreclosure claims based on home-equity liens. *See Kaspar*, 466 S.W.2d at 329.

5

In *Kaspar*, Henry Kasper purchased real property from Keller. *Id.* at 327. He signed a note that was secured by a deed of trust lien on the property. *Id.* Kasper later sued Keller to rescind the purchase contract and to cancel the note, asserting that the sale had been induced by fraud. *Id.* Keller did not file a counterclaim; however, he indicated his intention to foreclose under the power of sale provision in the deed of trust. *Id.* In response, Kasper obtained a temporary injunction, prohibiting foreclosure while the fraud suit was pending. *Id.*

Keller prevailed at trial, obtaining a take-nothing judgment against Kaspar. *Id.* Keller then completed the foreclosure under the power of sale provision in the deed of trust. *Id.* After the non-judicial foreclosure sale of the property, a deficiency remained on the note, and Keller sued Kaspar to recover it. *Id.* The trial court rendered summary judgment in Keller's favor, awarding him $236,712.85 against Kaspar. *Id.* at 327–28.

Kasper appealed, urging that Keller's deficiency claim should have been brought in his earlier fraud suit as a compulsory counterclaim, pursuant to Texas Rules of Civil Procedure Rule 97(a). *Id.* at 328. The court acknowledged that Keller's deficiency claim satisfied "the literal requirements of the Rule so as to constitute it, by its terms, a compulsory counterclaim." *Id.* The court concluded, however, that under the circumstances, an exception to compulsory counter claim rule was justified. *See id.* The court held:

> [T]he mortgagor [Kasper] should not be permitted to destroy or impair the mortgagee's [Keller's] contractual right to foreclosure under the power of sale by the simple expedient of instituting a suit, whether groundless or meritorious, thereby compelling the mortgagee to abandon the extra-judicial foreclosure which he had a right to elect, nullifying his election, and permitting the mortgagor to control the option as to remedies.

*Id.* at 329.

In their brief, Appellants assert, "*Kaspar* and its progeny hold that the lender cannot be forced to choose judicial remedies *only if* it has contracted for non-judicial remedies." According to Appellants, the *Kaspar* rule has no application to foreclosure of home-equity liens because lenders have no right to a non-judicial remedy even when the lender has contracted for such as remedy. Appellants point to article XVI, section 50(a)(6)(D) of the Texas Constitution, which requires that a home-equity loan be "secured by a lien that may be foreclosed upon only by a court order." TEX. CONST., art. XVI, § 50(a)(6)(D). From this, Appellants posit that, because a home-equity lien may only be foreclosed by "court order," the only remedy that a lender has to foreclose such a lien is "a judicial remedy." Thus, the distinctions found in *Kaspar* have no application in a foreclosure of a home-equity lien.

Appellants, however, read *Kaspar* too narrowly. As the Fifth Circuit Court of Appeals has pointed out, the underlying purpose of the *Kaspar* rule is to "prevent a borrower from depriving its lender of a choice of remedies." *Douglas v.*

*NCNB Tex. Nat'l Bank*, 979 F.2d 1128, 1130 (5th Cir. 1992). When, as in this case, the security instrument in a home-equity loan contains a power of sale provision, the lender has a choice of remedies. *See* TEX. R. CIV. P. 735.3. Under these circumstances, the lender may choose to file a claim for judicial foreclosure. *See id.*; *see also In re Erickson*, 566 FED. APP'X 281, 284 (5th Cir. 2014) (holding that, under Texas law, a mortgagor with a home-equity lien, which includes a power of sale provision, may pursue judicial foreclosure). As Appellants point out, a claim for judicial foreclosure could be filed as a counterclaim in a suit initiated by the borrower, which, as in *Steptoe I*, challenges the propriety of the loan agreement.

Rule of Civil Procedure 736 furnishes another remedy to the lender. "Rule 736 provides the procedure for obtaining a court order . . . to allow foreclosure of a lien containing a power of sale in the security instrument, . . . including a lien securing . . . a home equity loan . . . ." TEX. R. CIV. P. 735.1(a). Thus, a home-equity lender, who has contracted for the right of non-judicial foreclosure under a power of sale provision, may choose to pursue the special procedure found in Rule 736 to obtain an order allowing it to proceed with a non-judicial foreclosure under the Texas Property Code. *See* TEX. R. CIV. P. 735.1(a); *see also* TEX. R. CIV. P. 736.9 ("After an order [under Rule 736] is obtained, a person may proceed with the foreclosure process under applicable law and the terms of the lien sought to be

8

foreclosed."); TEX. PROP. CODE ANN. § 51.002(a) (Vernon 2014) (describing procedures for non-judicial foreclosure under power of sale conferred by deed of trust).

We have previously provided the following analysis of Rule 736:

When read as a whole, rule 736—titled "Expedited Foreclosure Proceeding"—does not contemplate an ordinary lawsuit. As its name suggests, Rule 736 provides a faster, more streamlined alternative to judicial foreclosure. A lender initiates the "proceeding" by filing an "application," not an original petition, and the borrower may file a "response," not an original answer. *Compare* TEX. R. CIV. P. 736(1) (describing proceeding and contents of application), *with* TEX. R. CIV. P. 45(a) (requiring a petition and answer in each lawsuit), and TEX. R. CIV. P. 47 (describing contents of a petition or counterclaim).

Only one issue may be decided under rule 736: "the right of the applicant to obtain an order to proceed with foreclosure under the security instrument and Tex. Prop. ANN. § 51.002." TEX. R. CIV. P. 736(7); *see* TEX. PROP. CODE ANN. § 51.002. The rule contemplates a single hearing at which the district court must determine whether the applicant has satisfied its burden to prove "the grounds for the granting of the order sought in the application"; there is no provision for any other determination to be made by a factfinder. *See* TEX. R. CIV. P. 736(6). The application must be denied if the respondent establishes that the applicant has not satisfied any element under the rule. *See id.* The district court's determination of whether to grant or deny the application is not intended to be a binding adjudication of the merits of any disputes between a lender and a borrower. Indeed, the rule expressly states that the district court's determination is without any preclusive effect. TEX. R. CIV. P. 736(9) ("No order or determination of fact or law under Rule 736 shall be res judicata or constitute collateral stopped or estoppel by judgment in any other proceeding or suit."). The limited nature of a rule 736 foreclosure proceeding is further underscored by the rule's prohibition against discovery. TEX. R. CIV. P. 736(6) ("No discovery of any kind shall be permitted in a proceeding under Rule 736").

9

*Huston v. U.S. Bank Nat'l Ass'n*, 359 S.W.3d 679, 682 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Although not expressly addressed by Rule 736, it is evident from the above discussion that a Rule 736 proceeding cannot be brought as a counterclaim in a borrower's suit against the lender. *See id.* Rather, it is a special, expedited proceeding with a unique procedural mechanism that is not compatible with the administration of a suit brought by a borrower to challenge the propriety of a loan agreement. *Cf. id.* at 682–83 (holding that borrower could not assert a counterclaim in a Rule 736 proceeding).

Were we to hold that the *Kaspar* rule does not apply to a home-equity lien, which includes a bargained-for power-of-sale provision, we would necessarily be requiring such a lender to assert a counterclaim to preserve its foreclosure rights. This would result in the impairment of the lender's right to pursue one its remedies, namely a Rule 736 proceeding. To abridge a creditor's remedy, particularly one specifically crafted to provide a remedy under a special set of circumstances, would be antithetical to the underlying purpose of the *Kaspar* rule, which is to preserve the lender's remedy choice and to curtail a debtor's ability to control what remedy a creditor may pursue. *See Kaspar*, 466 S.W.2d at 329. Requiring a lender to assert a counterclaim to preserve its foreclosure rights has the potential to encourage the filing of meritless suits by borrowers for the purpose of

10

interfering with a creditor's choice of remedy.  In keeping with the purpose of the *Kaspar* rule, a mortgagor, who has the bargained-for right of non-judicial foreclosure should not be limited only to those remedies that may be brought as a counter-claim.  When, as here, a home-equity lien allows for alternate remedies on the mortgagor's default, the *Kaspar* rule applies.  *See id.*

Thus, we hold that JPMC was not required to assert a compulsory counterclaim in *Steptoe I* to preserve the foreclosure claim that it has asserted, here, in *JPMC II*.  *See Huston v. U.S. Bank Nat'l Ass'n*, 988 F. Supp. 2d 732, 740 (S.D. Tex. 2013) (holding that mortgagor, which had a home-equity lien permitting alternate foreclosure remedies, had not been required to assert a counterclaim in earlier suit in order to preserve its foreclosure rights); *see also In re Erickson*, 566 Fed. App'x. at 284 (recognizing, in a home-equity case, that "judicial foreclosure and the ability of a trustee to foreclose under the power of sale in a deed of trust are separate and distinct remedies, either of which the trustee may elect to pursue"); *Soin v. JPMorgan Chase Bank, N.A.*, No. H–14–1861, 2014 WL 4386003, at *3 (S.D. Tex. Sept. 14, 2104) (applying holdings in *Erickson* and *Huston* to determine that the bank "had both judicial and nonjudicial avenues available for enforcement of the Security Agreement and, therefore, were not required to seek enforcement of the Security Agreement as a compulsory

counterclaim").[*]   We further hold that the trial court did not err by denying

Appellants' motion for summary judgment and granting that of JPMC.

We overrule Appellants' sole issue.

### Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Huddle.

---

[*]    Appellants rely on the following language found in a footnote from an unpublished federal case from the Northern District of Texas: "Under Texas law, if the loan is a home-equity loan, the purported contractual right to non-judicial foreclosure is a nullity and therefore cannot be waived, and the compulsory counterclaim rule applies." *Witt v. Countrywide Home Loans, Inc.*, No. 3:06-CV-1384-D, 2007 WL 2296538, at *4 n.8 (Tex. N.D. Aug. 10, 2007).  We, however, find the holdings by the federal courts in *Erickson*, *Huston*, and *Soin* to be more in keeping with the *Kaspar* rule, as discussed *supra*.