**Opinion issued June 18, 2019**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-17-00978-CV
_____

## DAVID W. PERRY, Appellant

## V.

## CAM XV TRUST, Appellee

---

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-61171**

---

## O P I N I O N

This appeal arises out of a suit for judicial foreclosure. Cam XV Trust sued

David W. Perry, alleging that he defaulted on a home-equity loan and that the

Trust lawfully accelerated his debt. The Trust successfully moved for summary

judgment on its foreclosure claim. Perry appeals on four issues, contending that:

(1) the Trust's foreclosure claim is barred by the statute of limitations;

(2) the Trust's foreclosure claim is barred by the doctrine of res judicata;

(3) the Trust failed to conclusively prove its claim for foreclosure; and

(4) the Trust failed to conclusively disprove Perry's defense asserting that its lien was void and unenforceable due to a constitutional violation.

We reject Perry's contentions and affirm the trial court's summary judgment.

## BACKGROUND

The history of the foreclosure dispute between the Trust (and its predecessors-in-interest) and Perry is convoluted. For brevity's sake, we summarize only those details that are material to the appellate issues. Because there is no dispute that the Trust is the successor-in-interest of the original lender, we omit its chain of predecessors-in-interest and refer only to the Trust.

Perry took out a $140,800 home-equity loan from the Trust in 2005. To secure repayment, the Trust required Perry to sign a security instrument in addition to the note. The security instrument granted the Trust a first-lien security interest in Perry's home.

In 2010, Perry and the Trust became embroiled in a payment dispute. On September 3, the Trust notified Perry that the loan was in default because of his failure to make the required payments. It advised Perry that if he did not cure the default by October 3, "the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full, and

2

foreclosure proceedings will be initiated at that time." When Perry failed to cure the default, the Trust sent him further notice on October 3 stating that it had "elected to accelerate the maturity" of his debt.

In March 2012, Perry sued the Trust, alleging that it had made misrepresentations about modifying the loan's terms and thereby violated the Texas Deceptive Trade Practices Act (DTPA). The Trust obtained a final no-evidence summary judgment in its favor in the 2012 suit.

The Trust filed the present suit for judicial foreclosure on October 20, 2014. Perry filed a general denial. He asserted two affirmative defenses, alleging that the Trust's foreclosure claim was barred by the statute of limitations and that the debt was void because the Trust had violated the Texas Constitution. He asserted counterclaims to remove cloud and quiet title and for declaratory judgment based on these same two grounds. Both parties moved for summary judgment on the Trust's foreclosure claim. Perry's summary-judgment motion was based on the affirmative defenses of limitations and res judicata. The trial court denied Perry's motion, granted the Trust's motion, and rendered a judicial-foreclosure judgment. Perry moved for reconsideration, which the trial court denied.

## DISCUSSION

We review summary judgments de novo. *City of Richardson v. Oncor Elec. Delivery Co.*, 539 S.W.3d 252, 258 (Tex. 2018). Traditional summary judgment is

3

proper when the material facts are not disputed and the moving party is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Oncor*, 539 S.W.3d at 258–59. When both parties move for summary judgment and the trial court grants one motion and denies the other, we decide all questions presented and render the judgment that the trial court should have rendered. *Oncor*, 539 S.W.3d at 259.

## I.      Statute of Limitations

The Trust filed its foreclosure suit on October 20, 2014. Perry contends that the four-year statute of limitations already had expired by that time.

The Trust notified Perry that he was in default on September 3, 2010. In this notice, the Trust informed Perry that if he did not cure the default "on or before October 3, 2010, the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time." Perry therefore argues that his debt was accelerated on October 3, 2010 and that the Trust had to file suit within four years of that date. *See* TEX. CIV. PRAC. & REM. CODE § 16.035(a). Perry relies on the acceleration provision of the home-equity security instrument, contending that it gave the Trust the right to serve a single notice of default and acceleration and that the Trust did so in its September 3 letter.

The Trust responds that its September 3 letter was merely a notice of default and intent to accelerate the maturity of Perry's debt. According to the Trust, it did

4

not exercise its right to accelerate until October 20, 2010, when it sent Perry a notice of acceleration that stated it had not received payment of the past-due balance and therefore "elected to accelerate the maturity of the debt." The Trust therefore maintains that the four-year statute of limitations began to run when it gave its October 20 notice, not on October 3. The Trust maintains that when a security instrument gives a lender the option of accelerating the debt, the lender must provide separate notices of default and acceleration and that limitations begins to run only when the latter notice is given.

In relevant part, the instrument's acceleration provision provides that:

Lender shall give notice to Borrower prior to acceleration. . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. . . . If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.

Perry contends that this acceleration provision gave the Trust the right to accelerate his debt without further notice if he did not cure any default identified in the September 3 notice by the date specified—October 3. He further contends that the Trust did so by the plain terms of its September 3 letter.

Perry's contention is incorrect. A debtor ordinarily has a right to separate notices of the intent to accelerate a debt and the actual acceleration of that debt. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001). He may waive the right to these notices, but any such waiver must be clear and unequivocal and therefore must reference "notice of intent to accelerate" to waive the former and "notice" or "notice of acceleration" to waive the latter. *Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 893–94 (Tex. 1991). The acceleration provision in the home-equity security instrument lacks a clear and unequivocal waiver of Perry's right to either notice. *Cf. Athari v. Hutcheson*, 801 S.W.2d 896, 897 (Tex. 1991) (per curiam) (acceleration provision allowing acceleration without further notice waived right to notice of acceleration but not right to notice of intent to accelerate). Accordingly, the Trust was required to provide both notice of the intent to accelerate and a separate notice of acceleration upon Perry's failure to cure the default.

Moreover, even if the acceleration provision had allowed the Trust to accelerate Perry's debt without further notice, it did not require the Trust to do so and the Trust did not do so. In its September 3 letter, the Trust notified Perry of its intent to accelerate the debt if he did not cure the default by a specified date: "If the default is not cured on or before October 3, 2010, the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and

6

payable in full, and foreclosure proceedings will be initiated at that time." In its October 20 letter, the Trust then informed Perry that it had elected to accelerate the debt because of his uncured default. Having followed the ordinary two-step process for accelerating Perry's debt, the four-year statute of limitations for bringing a foreclosure suit began to run on the date that the Trust actually exercised its option to accelerate Perry's debt—October 20. *See Holy Cross*, 44 S.W.3d at 566; *Khan v. GBAK Props.*, 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

Because the Trust filed suit within four years of the date that it accelerated Perry's debt, Perry's statute of limitations defense fails as a matter of law.

## II.    Res Judicata

In his 2012 suit, Perry alleged that the Trust misrepresented the nature of the home-equity loan and thereby violated the DTPA. The Trust obtained a final take-nothing summary judgment in its favor in this prior suit. Perry contends that the Trust failed to assert its foreclosure claim in the 2012 suit and that res judicata bars it from doing so now.

Res judicata ordinarily bars a party from asserting claims that were or could have been raised in a prior suit between the same parties or their privies that resulted in a final judgment on the merits. *See Travelers Ins. Co v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). But home-equity loan security instruments that

7

provide the lender with alternate foreclosure remedies are an exception to res judicata. *Steptoe v. JP Morgan Chase Bank*, 464 S.W.3d 429, 431–34 (Tex. App.—Houston [1st Dist.] 2015, no pet.). When these instruments allow a lender to pursue either judicial foreclosure—a claim that could be asserted as a counterclaim in a suit brought by the borrower—or non-judicial foreclosure under a power-of-sale provision in the instrument—a claim that is subject to special procedures and cannot be asserted as a counterclaim—res judicata does not bar the lender from asserting a foreclosure claim that it did not assert in a prior suit filed by the borrower. *See id.*; *see also* TEX. R. CIV. P. 735.1–.3, 736.1–.13 (special procedures for obtaining court order, when required, to foreclose on lien containing power of sale in security instrument).

The security instrument gave the Trust a choice of foreclosure remedies, including a power of sale. Therefore, the Trust did not have to assert its foreclosure claim as a counterclaim in Perry's 2012 suit and is not now barred from doing so by res judicata. *See Steptoe*, 464 S.W.3d at 431–34.

Perry argues that *Steptoe* is distinguishable. He contends that *Steptoe* held that a suit for non-judicial foreclosure under a power-of-sale provision is not subject to res judicata. But because a suit for judicial foreclosure, like this one by the Trust, could be asserted as a counterclaim in a suit by a borrower, Perry maintains that it must have been asserted as a counterclaim or be barred.

8

In *Steptoe*, the lender sought non-judicial foreclosure. 464 S.W.3d at 430–31. *Steptoe*'s holding, however, is not limited to non-judicial foreclosures. The court held that when "a home-equity lien allows for alternate remedies on the mortgagor's default," the lender is not required to seek foreclosure in a suit brought by the mortgagor or else forfeit its foreclosure rights. *See id.* at 434. The court reasoned that a contrary holding would allow the mortgagor to dictate the lender's remedy by filing suit first and thereby impairing the lender's choice of remedies. *See id.* This remains true no matter what type of foreclosure remedy a lender seeks; under the rule proposed by Perry, he could decide which foreclosure remedy the Trust may exercise and when. This is the very proposition that *Steptoe* rejected. *See id.*

Another provision of the home-equity security instrument further buttresses our conclusion that res judicata does not bar the Trust's foreclosure claim. The instrument provides that any forbearance by the Trust "in exercising any right or remedy . . . shall not be a waiver of or preclude the exercise of any right or remedy." Holding that res judicata bars the Trust from foreclosing would be tantamount to holding that the Trust's decision to refrain from asserting its foreclosure rights at an earlier time, standing alone, resulted in the waiver of these rights, contrary to the terms of the instrument. *See Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480–86 (Tex. 2017) (landlord did not waive right to

bring forcible detainer action by accepting late payments from tenant given lease provision providing that late acceptance of payments was not waiver and fact that landlord did not intentionally engage in affirmative conduct inconsistent with invocation of non-waiver provision). We therefore hold that res judicata does not provide Perry with a defense to the Trust's foreclosure claim as a matter of law.

## III. Fact Issues

### A. Trust's foreclosure claim

Perry next contends that the Trust did not conclusively prove that he breached the home-equity loan note and security instrument by failing to make payments without an excuse. He maintains that (1) he submitted summary-judgment evidence showing that the Trust breached the note and instrument by dishonoring an agreement to forbear because of his financial difficulties and therefore was not justified in accelerating the maturity of his debt, and (2) the Trust did not offer any contrary evidence to these factual defenses.

Perry does not cite any authority in support of this argument apart from Rule 166a and decisions articulating the summary-judgment standard. He does not identify the elements that the Trust was required to prove on its claim, let alone supporting authority or authority establishing that the factual defenses that he relies on are in fact defenses that the Trust must disprove if raised by the evidence. Nor does Perry include citations to the record evidence supporting this argument. A

party whose brief lacks appropriate citation of authority and to the record waives the issue. TEX. R. APP. P. 38.1(i); *Izen v. Comm'n For Lawyer Discipline*, 322 S.W.3d 308, 321 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Perry therefore has waived his argument that the Trust did not conclusively prove its foreclosure claim.

## B.     Perry's affirmative defense

Perry asserted counterclaims to remove cloud and quiet title and for declaratory judgment, alleging that the Trust violated Article XVI, Section 50(a)(6) of the Texas Constitution and that this constitutional violation rendered the Trust's lien void. The Trust successfully moved for summary judgment based on res judicata, arguing that Perry's constitutional counterclaim was barred because Perry did not assert any constitutional violations in his 2012 suit. On appeal, Perry contends that the Trust did not conclusively prove its defense of res judicata.

Though Perry characterizes his constitutional claim as a counterclaim in his brief, it is the equivalent of an affirmative defense for the purposes of the Trust's lawsuit. *See R.R. Comm'n of Tex. v. Gulf Energy Expl. Corp.*, 482 S.W.3d 559, 566 (Tex. 2016) (defining affirmative defense as facts and arguments that, if correct, defeat plaintiff's claim even if plaintiff's allegations are true). Indeed, in his answer to the Trust's suit, Perry referenced his constitutional argument both as an affirmative defense and as a counterclaim. In a nutshell, Perry contends that the

11

Trust is not legally entitled to foreclose because the underlying note and security instrument are void because of the Trust's violation of Article XVI, Section 50(a)(6) of the Texas Constitution, thereby freeing him of any obligation to pay the debt he otherwise would owe.

In *McKeehan vs. Wilmington Savings Fund Society*, 554 S.W.3d 692 (Tex. App.—Houston [1st Dist.] 2018, no pet.), this court recently rejected the applicability of res judicata to the borrower's affirmative defense of payment. The McKeehans had filed a suit asserting constitutional violations against the lender before the lender sued them for foreclosure. *Id.* at 696. Their suit was dismissed on statute-of-limitations grounds. *Id.* at 696. In the lender's subsequent suit for foreclosure, the McKeehans alleged that they had not defaulted on the loan because they had complied with the terms of a forbearance agreement and requested that the amount that they had paid under the forbearance agreement ($32,000) be applied to their indebtedness. *Id.* at 700. This court agreed, finding that the lender was "not relying on the doctrine of res judicata as an affirmative defense," but rather "using the doctrine as a weapon to prevent the McKeehans from asserting their own defense of payment" to their indebtedness. *Id.* at 701. As a result, the McKeehans were allowed to reduce their indebtedness by $32,000.

The present case is different. In his 2012 suit, brought before the foreclosure suit, Perry sued the Trust under the DTPA, alleging that it made misrepresentations

to Perry about the cost, benefits, and qualities of the home-equity loan modification. Perry also alleged that the Trust's predecessor "refused to do anything about the situation, thus leading the defendant to begin the foreclosure process on the homestead." And as one of his elements of damages, Perry alleged that the Trust's predecessor's conduct was a producing cause of the initiation of the foreclosure on his home. In his 2012 suit, however, Perry did not assert his constitutional claim, despite his acknowledgment of the impending foreclosure process in his pleading.

In *Hallco Texas, Inc. v. McMullen County*, the Texas Supreme Court held that a landowner's as-applied takings claim was ripe for adjudication in a landowner's prior suit challenging the ordinance on its face, and thus was barred by res judicata. 221 S.W.3d 50, 58 (Tex. 2006). The court noted that res judicata (or claim preclusion) bars a second action by parties and their privies on matters actually litigated in a previous suit, as well as claims "which, through the exercise of diligence could have been litigated in a prior suit." *Id.* (quoting *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 799 (Tex. 1992)). The court applied the transactional approach to res judicata, which requires claims arising out of the same subject matter to be litigated in a single lawsuit. *Id.* (citing *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex. 1992)). The court explained that the doctrine "serves vital public interests" by promoting the finality of judgments and

prevents needless, repetitive litigation, *id.* (citing *John G. and Marie Stella Kennedy Mem'l Found v. Dewhurst*, 90 S.W.3d 268, 288–89 (Tex. 2002)), and in doing so, "advance(s) the interests(s) of the litigants (who must pay for each suit), the courts (who must try each suit), and the public (who must provide jurors and administration for each suit)." *Id.* (quoting *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 278 (Tex. 2004)). Perry was required to litigate his constitutional challenge to the Trust's lien when litigating his DTPA suit and the pending foreclosure at that time. Because of this failure, res judicata prevents him from asserting his constitutional claim as a defense to the Trust's foreclosure action in this case.

Our dissenting colleague asserts that *McKeehan* prohibits res judicata from applying to Perry's constitutional defense to the Trust's foreclosure action, but the facts here are distinguishable from *McKeehan*. When Perry filed his 2012 suit against the Trust asserting a claim under the DTPA, he could have also litigated his constitutional claim. In fact, Perry referenced a pending foreclosure three times in his petition. While using the DTPA as a "weapon" to seek monetary damages, Perry also could have asserted his constitutional claim as a weapon to declare the Trust's lien void. This is a different scenario than *McKeehan*: the McKeehans asserted their constitutional claim before the lender's assertion of its foreclosure claim. The McKeehans' defense of payment was not ripe until the foreclosure

suit—the McKeehans' first opportunity to raise their defense of payment to reduce their indebtedness did not arise until the lender sued them for foreclosure.* This court correctly held that the defense of payment was not barred by res judicata.

Because Perry could have litigated the constitutionality of his loan in his 2012 suit, the trial court correctly ruled that res judicata barred his constitutional claim raised as an affirmative defense to the Trust's foreclosure action.

## CONCLUSION

We overrule Perry's issues and affirm the judgment of the trial court.


Richard Hightower
Justice

Panel consists of Justices Keyes, Goodman, and Hightower.

Goodman, J., concurring in part and dissenting in part.

---

\*        Contrary to the dissent, the exception to res judicata afforded to the lender in *Steptoe* does not apply to the borrower. The borrower is still subject to the traditional rules of res judicata.