

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00179-CV

_____

DAVID KERR AND GAIL KERR, Appellants

V.

THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A. AS TRUSTEE
ON BEHALF OF CWABS ASSET-BACKED CERTIFICATES TRUST 2007-12
AND CARRINGTON MORTGAGE SERVICES, LLC, Appellees

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-301419-18

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

Appellants David and Gail[1] Kerr (Kerrs)[2] appeal the trial court's judgment ordering that they take nothing on their claims against Appellees The Bank of New York Mellon Trust Company, N.A. as trustee on behalf of CWABS, Inc., Asset-Backed Certificates Trust 2007-12 (BoNYM trust company) and Carrington Mortgage Services, LLC (Carrington) and granting Carrington's counterclaim for declaratory relief.[3]   In two points, the Kerrs argue that the trial court erred (1) by granting Carrington's counterclaim and (2) by granting judgment in BoNYM trust company and Carrington's favor.  We affirm.

### II. BACKGROUND

David Kerr executed a Texas home equity note on June 22, 2007, promising to repay an original principal amount of $75,400, plus interest, beginning on August 1,

---

[1]On December 24, 2020, the Kerrs' counsel filed a suggestion of death indicating that Appellant Gail Kerr died on December 6, 2020.  However, pursuant to Rule 7.1(a)(1) of the Texas Rules of Appellate Procedure, we "proceed to adjudicate the appeal as if all parties were alive."  Tex. R. App. P. 7.1(a)(1).

[2]When necessary, we will refer to each individual Appellant by the names David Kerr or Gail Kerr.  Also when necessary, we will refer to BoNYM trust company and Carrington collectively as Appellees.

[3]Even though not parties to this appeal, CWABS, Inc., Asset-Backed Certificates, Series 2007-12 trust (CWABS) is the owner of the loan at issue in this case, and The Bank of New York Mellon (BoNYM state bank) is the trustee of the certificate holders of CWABS.

2007, and maturing on July 1, 2037, at the rate of $684.08 monthly. To secure repayment of the loan, David and Gail Kerr executed a Texas home equity security instrument on June 29, 2007, granting a lien against their property located in Bedford.

The Kerrs filed this suit on August 6, 2018, against BoNYM trust company and Carrington to stay a foreclosure sale scheduled the next day. The Kerrs argued that BoNYM state bank noticed the foreclosure sale but never obtained a court order to do so. The Kerrs asserted claims for breach of contract and violations of the Texas Property Code and the Texas Debt Collection Act (TDCA). Carrington, as mortgage servicing agent for BoNYM state bank, asserted a counterclaim against the Kerrs for a declaration that it was entitled to foreclose the security instrument and sell the property due to the default.[4]

On January 30, 2020, the trial court heard the Kerrs' claims and Carrington's counterclaim. At trial, copies of the relevant note, security instrument, assignment instrument, servicing transfer notice, and two April 1, 2019 notices of default were admitted into evidence.

While the Kerrs offered no exhibits into evidence, David Kerr testified that, after obtaining the loan, he began to immediately have difficulty making payments on it. According to him, some of the problems he experienced were due to the original

---

[4]The Kerrs amended their petition to name BoNYM state bank as an additional defendant but later nonsuited BoNYM state bank on the record at the beginning of the bench trial.

lender going out of business, and he did not know where to make his payments or to whom to make them. He also testified that there had been two prior attempts by BoNYM state bank[5] to foreclose on the security instrument and sell the property. By David Kerr's account, he last made a payment on the loan shortly after having taken it out, and he had not made any payments for almost twelve years. He said he believed that the payments were "around 700" but that he was not sure because it had "been a while" since he had made a payment. He also admitted that he had not been paying taxes on the property, that the taxes had "been taken care of," and that he did not have the funds to repay the roughly $60,000 that he had not paid in mortgage payments or taxes over the last twelve years.

BoNYM trust company and Carrington called Demetrius Dansby, a litigation case manager for Carrington, to testify. Dansby said that his duties included reviewing collateral files and system records and serving as a corporate witness in court proceedings, including trials, depositions, and mediations. Dansby stated that David Kerr had signed a Texas Home Equity note on June 22, 2007, for the amount of $75,400. The loan was a thirty-year mortgage and the maturity date would have been July 1, 2037. Under the terms of the note, David Kerr was to make regular monthly payments of principal and interest in the amount of $684.08 beginning August 1, 2007, and continuing on the first day of each month until the loan matured.

---

[5]BoNYM state bank was formerly known as The Bank of New York.

If David Kerr failed to make payments in the time and manner required by the loan, the lender had the right to obtain an order authorizing it to foreclose the security instrument and sell the property as provided in the note's power-of-sale provision.

Dansby also explained that the Kerrs had signed a security instrument that granted a lien against the Kerrs' residence in Bedford, Texas. Further, Dansby testified that there was an "Assignment of Deed of Trust" that assigned the security instrument to BoNYM state bank and named Carrington as the loan servicer. He also said that CWABS is the owner of the loan, and BoNYM state bank is its trustee.

By Dansby's account, the Kerrs only made three payments on the loan in August, September, and October 2007. Dansby said that Carrington had sent the Kerrs two notices of default on April 1, 2019. By the term of the notices, the Kerrs had thirty days from the time of the notice to cure the default or the Bedford property would be scheduled for foreclosure. Dansby averred that the Kerrs did not cure the default. Moreover, Dansby stated that the outstanding principal on the loan was in excess of $75,000, that there was an outstanding unpaid interest balance of roughly $97,000, and that Carrington or its predecessors had spent almost $70,000 for the payment of property taxes and insurance. According to Dansby, when adding associated late charges, the total amount owed on the loan was in excess of $220,000.

Dansby also testified regarding two prior Rule 736 proceedings. *See generally* Tex. R. Civ. P. 736.1 *et seq.* Dansby said that although an incorrect "entity" had obtained a Rule 736 order in 2014, the Kerrs filed a lawsuit that stayed foreclosure of

the property for 569 days. Dansby also averred that this current lawsuit filed by the Kerrs was in response to a second Rule 736 order that had been issued. At the conclusion of the evidence, the trial court took the matter under advisement and requested proposed final orders.

On February 7, 2020, the trial court entered its final judgment ordering the Kerrs to take nothing on their claims against BoNYM trust company and Carrington. The trial court also granted Carrington judgment on its counterclaim declaring its right to foreclose the security instrument and sell the property at a nonjudicial foreclosure sale pursuant to the Texas Property Code. *See* Tex. Prop. Code Ann. §§ 51.002(b), 51.0025(2).

After the Kerrs requested findings of fact and conclusions of law and then filed a notice of past-due findings of fact and conclusions of law, the trial court entered its findings of fact and conclusions of law. The Kerrs filed a motion to vacate judgment, which was overruled by operation of law. This appeal followed.

## III. DISCUSSION

### A. Carrington's Counterclaim

In their first point, the Kerrs argue that the trial court erred by granting Carrington's counterclaim. Specifically, the Kerrs contend that Carrington's counterclaim "was impermissible in a suit brought by home equity loan debtors in response to an order granted in a prior proceeding under" Texas Rule of Civil Procedure 736. Appellees respond that "Carrington was not barred from bringing a

6

counterclaim pursuant to [Rule 736] and neither it nor BoNY trust company lacked standing or capacity to sue or be sued in this action." We agree with Appellees.

### 1. Permissibility of Counterclaim

"A suit to foreclose on real property . . . is a legal proceeding seeking the satisfaction of a debt through foreclosure of [a] lien on real property." *Mark v. Household Fin. Corp. III*, 296 S.W.3d 838, 839 (Tex. App.—Fort Worth 2009, no pet.). "*The basis* of such an action is a promissory note secured by a deed of trust or mortgage on real property." *Id.* (emphasis added). "A lien securing repayment of a home-equity note may only be foreclosed upon by a court order." *Grady v. Nationstar Mortg., LLC*, No. 02-16-00481-CV, 2017 WL 5618690, at *1 n.2 (Tex. App.—Fort Worth Nov. 22, 2017, pet. denied) (mem. op.) (citing Tex. Const. art. XVI, § 50(a)(6)(D)); *see Wells Fargo Bank, N.A. v. Robinson*, 391 S.W.3d 590, 593 (Tex. App.—Dallas 2012, no pet.).

When, as here, the security instrument as part of a home-equity loan contains a power-of-sale provision, the lender may file a claim for judicial foreclosure or use Texas Rule of Civil Procedure 736 to obtain an order allowing it to proceed with nonjudicial foreclosure.[6] *See Steptoe v. JPMorgan Chase Bank, N.A.*, 464 S.W.3d 429,

---

[6]In the case of a nonjudicial foreclosure, Chapter 51 of the Property Code supplies the statutory requirements, in addition to those in the deed of trust, that must be followed to effectuate a valid sale. *See* Tex. Prop. Code Ann. § 51.002 ("Sale of Real Property Under Contract Lien"); *Morrison v. Christie*, 266 S.W.3d 89, 92 (Tex. App.—Fort Worth 2008, no pet.) ("Section 51.002 regulates nonjudicial foreclosures,

432–33 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *see also* Tex. R. Civ. P. 735.1(a) (stating that Rule 736 provides the procedure for obtaining a court order to allow foreclosure of a home-equity loan containing a power of sale in the security instrument); Tex. R. Civ. P. 735.3 (stating that a Rule 736 order is not a substitute for a judgment for judicial foreclosure); 27 Genevieve Hebert Fajardo & Ramona L. Lampley, *Texas Practice Series: Consumer Rights & Remedies* § 7.14 (3d ed. 2020) (stating that a party seeking to foreclose a home-equity loan "may file suit seeking judicial foreclosure, file a suit or counterclaim seeking a final judgment which includes an order allowing foreclosure under [Section 51.002 of] the Texas Property Code, or file an application under Rule 736" (footnotes omitted)).

Specifically regarding Rule 736, the rule provides a special procedure for obtaining a court order to foreclose a home equity lien. *Steptoe*, 464 S.W.3d at 433 (citing Tex. R. Civ. P. 735.1). "Rule 736 provides a faster, more streamlined alternative to judicial foreclosure," with special rules and procedures inapplicable to conventional suits. Tex. R. Civ. P. 736; *Steptoe*, 464 S.W.3d at 433 (citing *Huston v. U.S. Bank Nat'l Ass'n*, 359 S.W.3d 679, 682 (Tex. App.—Houston [1st Dist.] 2011, no pet.)). Any challenge to a Rule 736 order must be made in "a suit filed in a separate, independent, original proceeding in a court of competent jurisdiction." Tex. R. Civ.

---

that is, the sale of real property after default by the debtor under a power of sale conferred by deed of trust or other contract lien.").

P. 736.8(c). If such a suit is filed, a proceeding or order under Rule 736 is automatically stayed. Tex. R. Civ. P. 736.11(a).

Citing *Reddick v. Deutsche Bank National Trust Company*, the Kerrs argue that a counterclaim for judicial foreclosure in a borrower's suit against the lender is impermissible. No. 3:16-CV-1997-D, 2017 WL 6343542, at *3 (N.D. Tex. Dec. 12, 2017). The Kerrs specifically point to a statement made in *Reddick* where the court stated, "Deutsche Bank could not exercise this right by bringing a Rule 736 proceeding or a counterclaim in a borrower's suit against the lender." *Id.* But the *Reddick* court was specifically discussing proceedings under Rule 736 when making this statement. *Id.* Indeed, the *Reddick* court cited *Steptoe*. *Id.* A review of *Steptoe* reveals that what is impermissible is a Rule 736 proceeding being "brought as a counterclaim in a borrower's suit against the lender." 464 S.W.3d at 433. Thus, we conclude that the Kerrs' reliance on *Reddick* is misplaced.

Further, we agree with Appellees that the answer to the question of whether a counterclaim seeking a declaratory judgment authorizing judicial foreclosure can be brought in a borrower's suit against a lender can be found in *Wilder v. Caliber Home Loans, Inc.*, No. 3:18-CV-3010-N-BN, 2019 WL 652462, at *1 (N.D. Tex. Feb. 15, 2019). In *Wilder*, the lender brought a counterclaim seeking a declaratory judgment authorizing foreclosure in the borrower's suit involving a claim that Rule 736 was unconstitutional. *Id.* After reviewing both *Reddick* and *Steptoe*, the *Wilder* court concluded that

9

> while Texas courts have held that a lender may not assert a Rule 736 counterclaim in a borrower's suit against it—and, conversely, a borrower may not assert a counterclaim in a lender's Rule 736 proceeding—that authority does not seem to support Wilder's argument that Caliber's proposed counterclaim may not be added . . . .

*Id.* at *3.

Even though very few cases address this argument directly for procedural reasons, it is not uncommon to find cases where a lender has brought a counterclaim seeking a declaratory judgment authorizing foreclosure in the borrower's suit. *Gaber v. U.S. Bank Nat'l Ass'n*, No. 02-19-00243-CV, 2020 WL 5242419, at *2 (Tex. App.—Fort Worth Sept. 3, 2020, pet. denied) (mem. op.) (holding that borrower had failed to preserve argument that lender was barred from bringing foreclosure counterclaim in borrower's suit against lender); *De La Garza v. Bank of N.Y. Mellon*, No. 02-17-00427-CV, 2018 WL 5725250, at *10 (Tex. App.—Fort Worth Nov. 1, 2018, no pet.) (mem. op.) (holding that lender had failed to meet its traditional summary judgment burden regarding its counterclaim for foreclosure and remanding to trial court for further proceedings); *see also Koncak v. Deutsche Bank Nat'l Tr. Co.*, No. 3:19-CV-00071-B-BT, 2020 WL 5219558, at *4 (N.D. Tex. Aug. 17, 2020), report and recommendation adopted, No. 3:19-CV-00071-B-BT, 2020 WL 5215128 (N.D. Tex. Sept. 1, 2020) ("As . . . Plaintiffs do not otherwise argue that Defendants have failed to state a [counter]claim for judicial foreclosure, Plaintiffs' Rule 12(c) Motion [to dismiss Defendants' counterclaim for judicial foreclosure] should be denied."). We hold that

10

a lender may bring a counterclaim for judicial foreclosure in a borrower's suit against the lender.

### 2. Carrington's Authority to Bring its Counterclaim

The Kerrs also argue that Carrington did not have the authority, as the loan servicer, to bring a claim for declaration that it was entitled to foreclose the security instrument and sell the property due to default. Without citing any authority, the Kerrs claim that a "party bringing a permissible counterclaim would need to own the loan and lien which are in dispute." We conclude that the Kerrs have waived this argument for our review, but even if the Kerrs had preserved this argument, it is without merit.

To present an issue for appellate review, "[t]he brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(h). This requirement is not satisfied by merely uttering brief conclusory statements unsupported by legal citations. *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.). Failure to cite legal authority or provide substantive analysis of the legal issue presented results in waiver of the complaint. *Id.*; *Sister Initiative, LLC v. Broughton Maint. Ass'n*, No. 02-19-00102-CV, 2020 WL 726785, at *25 (Tex. App.—Fort Worth Feb. 13, 2020, pet. denied) (mem. op.).

But even assuming that the Kerrs preserved this portion of their first point for our review, we conclude that Carrington had the authority to bring its counterclaim

11

on behalf of BoNYM state bank. An agent may sue on behalf of its principal if it is authorized to do so and asserts it is doing so in its pleadings. *Rodarte v. Investeco Grp., L.L.C.*, 299 S.W.3d 400, 407 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (reasoning that agent may bring claims on behalf of principal if authorized to do so); *AVCO Corp. v. Interstate Sw., Ltd.*, 251 S.W.3d 632, 653 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (reasoning that pleadings must show agent bringing claim on behalf of principal).

Here, the trial court found in its findings of fact that Carrington began servicing the loan on August 16, 2017, on behalf of BoNYM state bank by written agreement granting it the authority to service the loan. This is consistent with Carrington's pleadings and the evidence presented at trial. Thus, Carrington properly pleaded it was counterclaiming on behalf of BoNYM state bank, and the evidence and applicable law establishes it had the authority to do so. *See Rodarte*, 299 S.W.3d at 407. We overrule this portion of the Kerrs' first point.

### 3. Statute of Limitations

Again citing *Reddick*, 2017 WL 6343543, at *4, and also *Pettit v. U.S. Bank National Association*, No. 4:17-CV-00274-O-BP, 2018 WL 4076512, at *4 (N.D. Tex. June 28, 2018), the Kerrs argue that allowing Carrington to bring its counterclaim in this suit is contrary to the tolling principles regarding the statute of limitations discussed in those cases. It appears that the Kerrs are suggesting that because they initiated this suit after a Rule 736 proceeding had been brought, then all actions except

12

for their filing of this suit are impermissible, including Carrington's counterclaim. The Kerrs seem to argue that to allow Carrington to bring its counterclaim in this suit would effectively end the tolling of the statute of limitations. We disagree.

Although both *Reddick* and *Pettit* discuss that when a borrower brings suit after the initiation of a Rule 736 proceeding, then the filing of the borrower's suit tolls the statute of limitations while the suit is pending, these cases do not stand for the proposition that tolling ceases if a lender brings a counterclaim in a suit brought by the borrower. *Reddick*, 2017 WL 6343543, at *4; *Pettit*, 2018 WL 4076512, at *4. As *Reddick* and *Pettit* explained, the statute of limitations is tolled and "prevents foreclosure under Texas Rule of Civil Procedure 736" while the borrower's suit is being prosecuted. *Reddick*, 2017 WL 6343543, at *4; *Pettit*, 2018 WL 4076512, at *4. These cases simply say nothing about the effect of a lender's bringing a counterclaim in a borrower's suit and the impact that would have on tolling the statute of limitations. No matter what claims are involved in the borrower's suit, limitations would still be tolled until the case and all claims have been resolved. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001) (concluding that judgment is not final unless it disposes of all claims against all parties). We conclude that the Kerrs' limitations argument is unpersuasive, and we overrule it and the Kerrs' first point entirely.

13

## B. Registration Requirements and the Texas Debt Collection Act

In their second point, the Kerrs argue that the trial court "erred in granting judgment for Appellees, because the evidence established that there was an absence of standing and/or that there were outstanding fact issues on at least one element of each outstanding claim, including the counterclaim."[7] We disagree.

### 1. The Texas Estates Code and Business Organizations Code

In part of their second point, the Kerrs claim that BoNYM trust company and BoNYM state bank were barred from taking any action related to the security instrument, including defending or prosecuting claims in the trial court, because BoNYM trust company and BoNYM state bank failed to comply with the registration requirements of Texas Estates Code Section 505.004 and Texas Business

---

[7]Even though the Kerrs' second point claims that there are fact issues "on at least one element of each outstanding claim," the Kerrs have not asserted in their brief that there is an outstanding fact issue on any element of their breach-of-contract claim.

Organizations Code Section 9.001(a); thus, they lacked standing[8] to defend this suit and bring Carrington's counterclaim.[9]

Chapter 505 of the Texas Estates Code governs service of process on foreign corporate fiduciaries. *See U.S. Bank Nat'l Ass'n v. TFHSP LLC Series 6481*, 487 S.W.3d 715, 716, 719–21 (Tex. App.—Fort Worth 2016, no pet.). Before a foreign corporate fiduciary may qualify or serve as a fiduciary in Texas, Chapter 505 requires it to file certain documents with the Texas Secretary of State. *Id.* at 718–19. Here, the Kerrs allege that BoNYM trust company and BoNYM state bank failed to comply with these registration requirements and therefore are "barred from defending, or from prosecuting claims in, the Prior Suit (a Rule 736 Proceeding) and in the instant suit." But even assuming BoNYM trust company or BoNYM state

---

[8]While the Kerrs refer to this as an issue of standing, they are actually complaining about BoNYM trust company's and BoNYM state bank's capacity. *See, e.g., Austin Nursing Center, Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005) (explaining that standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a "justiciable interest" in its outcome while the issue of capacity "is conceived of as a procedural issue dealing with the personal qualifications of a party to litigate").

[9]The Kerrs did file a plea in abatement in the trial court identifying these alleged defects. However, as Appellees point out, the Kerrs never presented any evidence in support of their plea, they did not set it for hearing, nor did they ever request a ruling. Thus, it is arguable that the Kerrs have waived this complaint. *See In re Truck Ins. Exch.*, No. 12-12-00183-CV, 2013 WL 1760793, at *2 (Tex. App.—Tyler Apr. 24, 2013, orig. proceeding) (mem. op.) ("A defendant who merely presents its plea in abatement without offering evidence to prove the grounds urged waives the plea unless it can demonstrate that the plaintiff's petition establishes the grounds urged in the plea."). We will assume without deciding that the Kerrs have preserved this argument for our review.

bank were required to register with the Texas Secretary of State under Texas Estates Code Chapter 505, the Kerrs failed to present any evidence in the trial court that they had not done so. *See Caballero v. Rushmore Loan Mgmt. Servs. LLC*, No. 05-19-00298-CV, 2020 WL 1685418, at \*6 (Tex. App.—Dallas Apr. 7, 2020, no pet.) (mem. op.) ("Even if U.S. Bank and Wilmington were required to register with the Secretary of State, no evidence shows they have not done so."). Thus, the Kerrs did not prove their Chapter 505 argument in the trial court, and their code-based argument fails on appeal. *See Grady v. Nationstar Mortg., LLC*, No. 02-19-00006-CV, 2020 WL 5242418, at \*7 (Tex. App.—Fort Worth Sep. 3, 2020, pet. denied) (mem. op.) (overruling argument on appeal that bank was required to register with the Secretary of State under Chapter 505 because appellant did not present evidence at trial of bank's alleged failure to register).

Like Chapter 505 of the Texas Estates Code, Texas Business Organizations Code Chapter 9 requires "a foreign entity" transacting business in Texas to file certain documents. Tex. Bus. Orgs. Code Ann. § 9.001(a). The Kerrs contend that BoNYM trust company and BoNYM state bank failed to comply with these registration requirements as well and thus lacked the authority to seek foreclosure on the Bedford property. But this court has held that the failure to comply with the registration requirements in Business Organizations Code Section 9.001 does not prevent holders in due course from filing suit or enforcing the terms of a negotiable instrument, nor do they prohibit a mortgagee from enforcing a mortgage lien. *Grady*, 2020 WL

16

5242418, at \*7.  Therefore, this code-based argument fails as well because even if BoNYM trust company or BoNYM state bank failed to file documents in accordance with Chapter 9, such a failure would not prevent them from filing suit to enforce the terms of the security instrument in this case.  *See id.*  We overrule this portion of the Kerr's second point.

### 2.  The Texas Debt Collection Act and Damages

In the remainder of their second point, the Kerrs argue that there is no evidence that BoNYM state bank owned their loan; thus, the Kerrs argue that the trial court erred by dismissing their TDCA claim and granting Carrington's counterclaim. Specifically, the Kerrs argue that any attempt by BoNYM trust company was an attempt to collect a debt not owed to it and therefore a threat to take an action that was a *per se* violation of Section 392.301(a)(8) of the TDCA.  The Kerrs' argument is predicated on their contention that the prior Rule 736 filings were brought by someone other than BoNYM trust company.

Appellees respond that the Kerrs' argument fails for two reasons: (1) The Kerrs never sued BoNYM trust company or Carrington for violating Section 392.301(a)(8), and (2) there is no such thing as a *per se* violation of the TDCA—the Kerrs were required, but failed, to show they suffered damages as a result of any alleged TDCA violation.  We agree with Appellees that the Kerrs were required but failed to plead and prove that they suffered damages under the TDCA.

17

The TDCA is the statutory embodiment of common law concerning unreasonable collection practices and prohibits use of deceptive means, making misrepresentations, harassment, and threats in the course of collecting a consumer debt. *See* Tex. Fin. Code Ann. §§ 392.301(a)(8), 392.302(4), 392.303(a)(2), 392.304(a)(8), (a)(19). To state a claim under the TDCA, a plaintiff must allege that: (1) the debt at issue is a consumer debt; (2) the defendant is a "debt collector" within the meaning of the TDCA; (3) the defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as a result of the defendant's wrongful act. *See id.* § 392.001 *et seq.*

To maintain an action for damages under the TDCA, a plaintiff must plead and prove actual damages. *See Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 31 (Tex. App.—Tyler 2000, pet. denied) ("Because [the plaintiff] did not prove that any actual damages were caused by [the defendant]'s debt collection practices, she did not successfully maintain an action under the Act."); *see also Lopez-Garcia v. Deutsche Bank Nat'l Trust Co. for Argent Sec. Inc.*, No. 5:16-CV-00217 (RCL), 2017 WL 2869430, at *4 (W.D. Tex. July 5, 2017) (granting summary judgment on the plaintiff's TDCA claim because "plaintiff . . . has presented no evidence of the actual damages upon which recovery under the TDCA must be based"); *Wood v. CitiMortgage, Inc.*, No. 4:11-CV-139, 2012 WL 642791, at *4 (E.D. Tex. Feb. 28, 2012) (granting defendants' motion for summary judgment on plaintiffs' TDCA claims where "there is no evidence of any damages or that they were caused by any violation of these statutes"); *Naranjo v.*

18

*Universal Sur. of Am.*, 679 F. Supp. 2d 787, 801 (S.D. Tex. 2010) ("Texas courts have stated that a plaintiff who cannot prove actual damages cannot 'successfully maintain an action under the [TDCA].'" (quoting *Jackson Law Office*, 37 S.W.3d at 30–31)). Because the Kerrs did not plead or prove that any actual damages were caused by the prior Rule 736 proceedings, they did not successfully maintain their action under the TDCA. *See Jackson Law Office*, 37 S.W.3d at 15. We overrule the Kerrs' second point entirely.

## IV. CONCLUSION

Having overruled both of the Kerrs' points on appeal, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered: April 15, 2021