The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
January 30, 2020

## 2020COA15

**No. 18CA0841, *Igou v. Bank of America, N.A.* — Creditors and
Debtors — Forcible Entry and Detainer — Limitation of Actions
— When Cause of Action Accrues**

A division of the court of appeals considers when a claim to

foreclose on a mortgage accrues where the mortgage agreement

gives the creditor the option to accelerate the entire loan if the

debtor defaults on a monthly payment. The division concludes

that, after a default, if the creditor notifies the debtor that the entire

mortgage will be accelerated on a specific future date if the debtor

fails to cure the default by that date, the debt is accelerated and the

claim accrues once that date arrives and the debt remains uncured.

The division also considers whether, after the debt in this case

had been accelerated, that acceleration was abandoned under *Bank*

*of New York Mellon v. Peterson*, 2018 COA 174M. The division

concludes that it was.

COLORADO COURT OF APPEALS     **2020COA15**

Court of Appeals No. 18CA0841
Jefferson County District Court No. 17CV30449
Honorable Diego G. Hunt, Judge

Darrell Igou,

Plaintiff-Appellant,

v.

Bank of America, N.A.,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE PAWAR
Dailey and Terry, JJ., concur

Announced January 30, 2020

Law Offices of John G. Nelson, John G. Nelson, Denver, Colorado, for Plaintiff-Appellant

Snell & Wilmer, L.L.P., Kevin Walton, Denver, Colorado; Severson & Werson, P.C., William A. Aspinwall, San Francisco, California, for Defendant-Appellee

¶ 1 Plaintiff, Darrell Igou, filed claims for declaratory judgment and injunctive relief against defendant, Bank of America, N.A., (BOA). Both claims were based on Igou's allegation that BOA's C.R.C.P. 120 motion, filed in a separate case and seeking authorization to foreclose on Igou's home, was barred by the statute of limitations. At trial, after Igou had presented his evidence, the district court dismissed both of Igou's claims under C.R.C.P. 41(b)(1), ruling that, based on Igou's evidence, BOA's C.R.C.P. 120 motion was not barred by the statute of limitations. We affirm.

## I. Background

¶ 2 Igou executed a promissory note with a creditor in exchange for a loan to buy a home. The note was secured by the deed of trust for the home. The promissory note required Igou to make monthly payments for thirty years and provided that if Igou defaulted by failing to make any of those monthly payments, the creditor had the option to accelerate the debt and require immediate payment of the loan's entire remaining balance. The deed of trust provided that if the creditor accelerated the debt, it could also "invoke the power of sale" and foreclose on the home.

¶ 3     BOA subsequently acquired the promissory note.  Igou defaulted in June 2010.  In August 2010, BOA sent Igou a letter titled "NOTICE OF INTENT TO ACCELERATE."  It stated that if Igou failed to cure the default by September 5, 2010, "the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time."  Igou failed to cure the default by September 5, 2010.  But BOA took no further action for almost two years.

¶ 4     In June 2012, BOA filed a notice of election and demand for sale by public trustee with the Public Trustee of Jefferson County.  But BOA did not file a C.R.C.P. 120 motion seeking the district court's authorization for a foreclosure sale based on this notice.  Instead, BOA withdrew the notice in October 2013.

¶ 5     In April 2016, BOA sent Igou a new letter titled "NOTICE OF INTENT TO ACCELERATE AND RIGHT TO CURE."  Much like the first, this letter offered Igou the opportunity to cure the default by paying all of the monthly installment payments he had missed up to that date.  And it stated that if he did not cure the default by May 14, 2016, "the mortgage payments will be accelerated with the full

amount of the loan remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time."

¶ 6    Igou failed to cure the default by May 14, 2016. And in July 2016, BOA filed another notice of election and demand for sale by public trustee. In December 2016, BOA filed a C.R.C.P. 120 motion in district court, which the court granted.

¶ 7    Igou then filed the two claims whose dismissal is the subject of this appeal. The first claim was for declaratory judgment that BOA's C.R.C.P. 120 motion was barred by the six-year statute of limitations. The second claim was for an injunction to prevent BOA from foreclosing on the home. The district court granted Igou a preliminary injunction, and the parties tried the case to the court.

¶ 8    After Igou presented his evidence, BOA moved for dismissal under C.R.C.P. 41(b)(1), arguing that Igou had failed to show that he was entitled to relief. The district court ruled that based on the law and Igou's evidence, BOA's C.R.C.P. 120 motion was not barred by the statute of limitations because it accrued, at the earliest, in June 2012 when BOA filed its first notice of election and demand

for sale. The court therefore granted BOA's motion and dismissed Igou's claims with prejudice.

¶ 9 Igou appeals, arguing that the district court erred by ruling that BOA's C.R.C.P. 120 motion was timely. We affirm the district court's ruling, but on different grounds. *See Blood v. Qwest Servs. Corp.*, 224 P.3d 301, 329 (Colo. App. 2009) (The appellate court "can affirm on any ground supported by the record."), *aff'd*, 252 P.3d 1071 (Colo. 2011).

## II. The District Court Properly Dismissed Igou's Claims

¶ 10 The standard of review for an order granting dismissal under C.R.C.P. 41(b)(1) is "whether judgment in favor of defendant is justified on the evidence presented." *Gold Hill Dev. Co., L.P. v. TSG Ski & Gold, LLC*, 2015 COA 177, ¶ 44 (quoting *Colo. Coffee Bean, LLC v. Peaberry Coffee Inc.*, 251 P.3d 9, 25 (Colo. App. 2010)). Because the facts relevant to whether BOA's foreclosure claim was timely are undisputed, we review that issue de novo. *See Colo. Coffee Bean*, 251 P.3d at 25.

## A. Accrual, Acceleration, and Abandoning an Acceleration

¶ 11 The parties agree that BOA's action under C.R.C.P. 120 was governed by the statute of limitations in section 13-80-103.5(1)(a),

C.R.S. 2019, which required that BOA file it within six years of its accrual.[1]  Because BOA's action sought to recover a debt, it accrued on the date the debt became due.  *See* § 13-80-108(4), C.R.S. 2019; *Hassler v. Account Brokers of Larimer Cty., Inc.*, 2012 CO 24, ¶¶ 19-21.

¶ 12     Generally, when a loan is to be repaid in monthly installments, each default on an individual monthly installment payment results in the accrual of a separate cause of action, each with its own limitations period.  *See Castle Rock Bank v. Team Transit, LLC*, 2012 COA 125, ¶ 22.  In contrast, if the loan agreement contains an acceleration clause giving the creditor the option to require immediate payment of the entire balance of the loan if the borrower defaults on a single monthly installment payment, only a single claim to recover the entire debt accrues.  *Id.* at ¶ 23.  Under these circumstances, the entire debt becomes due, and a claim to recover that debt accrues, when the creditor triggers the acceleration clause.  *Id.*  To trigger the acceleration clause, the creditor "must

---

[1] Neither the parties nor the district court raised whether the proper statute of limitations is that found at section 4-3-118(a), C.R.S. 2019.  We therefore do not address this issue.

perform some clear, unequivocal affirmative act evidencing his intention to take advantage of the accelerating provision." *Id.* (quoting *Moss v. McDonald*, 772 P.2d 626, 628 (Colo. App. 1988)). Other divisions of this court, and the supreme court, have consistently held that the debt becomes due and the claim accrues when the creditor evidences his "intent to accelerate" the debt. *Hassler,* ¶ 26; *see Castle Rock Bank,* ¶ 23; *Bauer Dev. Co. v. Nu-West, Inc.*, 757 P.2d 1149, 1150 (Colo. App. 1988).

¶ 13    After the trial in this case, a division of this court announced *Bank of New York Mellon v. Peterson*, 2018 COA 174M.  For the first time in Colorado, the division held that after exercising an option to accelerate a debt, a creditor may abandon that acceleration.  *Id.* at ¶ 36.  To do so, the creditor "must manifest its intent to abandon acceleration by a clear affirmative act."  *Id.* at ¶ 34.

¶ 14    Abandoning the acceleration "restores the note's original maturity date for purposes of accrual of the statute of limitations." *Id.* at ¶ 39.  Abandonment does not toll the statute of limitations. Instead, it restores the parties, for purposes of the statute of limitations, to the position they were in before the debt was accelerated.  Consequently, if the creditor reaccelerates the debt

6

after abandoning the first acceleration, a new claim accrues with a new six-year limitations period. *Id.* at ¶ 40.

¶ 15    The *Peterson* division held that the creditor in that case abandoned its original acceleration "by not only withdrawing the foreclosure but also by communicating its abandonment to the borrower." *Id.* at ¶ 37. Indeed, the division further noted, after the first acceleration, the creditor negotiated a loan modification and sent the borrower a new acceleration warning letter providing the borrower another opportunity to cure the default. *Id.*

   B. BOA's Rule 120 Motion was Timely Because BOA Abandoned the Original Acceleration and then Reaccelerated the Debt

¶ 16    We disagree with the district court's ruling that BOA's claim accrued when it filed the first notice of election and demand for sale in June 2012. Instead, we conclude that BOA accelerated Igou's debt, and a claim therefore accrued, in September 2010. But BOA then abandoned that acceleration. It then reaccelerated the debt in May 2016, causing a new claim to accrue, rendering the C.R.C.P. 120 motion filed in December 2016 timely. Based on this conclusion we also disagree with Igou's argument that the claim accrued in June 2010 at the time of default.

7

### 1.  BOA Accelerated the Debt in September 2010

¶ 17    BOA's August 2010 letter was titled "NOTICE OF INTENT TO ACCELERATE."  And it stated that if Igou failed to cure the default by September 5, 2010, "the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full."  The words "will be accelerated" were in bold.  This letter was a clear, unequivocal, and affirmative act evidencing BOA's intent to accelerate Igou's debt as of September 5, 2010.  Consequently, when September 5, 2010, came and went without Igou curing the default, a claim to foreclose on the home accrued and the statute of limitations began to run.

¶ 18    We are not persuaded otherwise by BOA's argument that the letter could not have caused a claim to accrue because it merely indicated that the debt *would be* accelerated on some future date if Igou failed to cure by then.  This argument is contrary to the plain meaning of the word "will," which is mandatory and not permissive.  The letter communicated to Igou that if the default remained uncured on September 5, 2010, the debt would automatically and certainly be accelerated at that time.  *See In re Neusteter Realty Co.*, 79 B.R. 30, 31-32 (D. Colo. 1987) (Creditors' letter to borrowers in

8

default stating "unless the default on all the notes listed above are [sic] cured within the next ten days, I hereby give you notice that we intend to accelerate and pursue appropriate legal remedies" accelerated the debt when borrowers failed to cure the default after ten days.).

¶ 19    BOA's argument is also contrary to *Green Tree Financial Servicing Corp. v. Short,* 10 P.3d 721 (Colo. App. 2000).  In that case, another division of this court analyzed when a creditor's claim to foreclose on a loan in default accrued.  *Id.* at 722.  As in our case, the terms of the loan in *Green Tree* gave the creditor the option to accelerate the debt in the event of a default.  *Id.*  After the borrower defaulted, the creditor sent the borrower a letter stating that if the borrower failed to cure the default "in the time allowed by the notice, [creditor] hereby accelerates the entire contract balance due and payable at the end of such cure period and may exercise its rights under the law."  *Id.* at 723.  The division held that this letter caused the accelerated debt to become due, and the creditor's claim for the accelerated debt to accrue, when the cure period expired twenty days later with the default still uncured.  *Id.*

¶ 20    BOA attempts to distinguish *Green Tree* by pointing out that the creditor's letter in that case used different language than BOA did here.  The *Green Tree* creditor stated that if the borrower failed to cure the default by a specific date, the creditor "hereby accelerates the [debt]," *id.* at 723; here, BOA's letter stated that if Igou failed to cure the default by a specific date, "the mortgage payments will be accelerated."  We conclude that this difference is insignificant for purposes of accrual.  In both cases, the creditor is telling the borrower that if the default is not cured by a specific date in the future, the creditor intends to accelerate the debt at that time.  And we agree with the *Green Tree* division that, when a creditor gives a borrower notice that a debt will be accelerated on a specific date in the future if the borrower fails to cure the default by then, and that date arrives with the default still uncured, the accelerated debt becomes due and the statute of limitations for an action on that debt begins to run.

¶ 21    Nothing in our supreme court's opinion in *Hassler* leads us to a different conclusion.  In that case, the supreme court analyzed when the balance of a car loan became due, thereby triggering accrual for a claim to recover it.  *Hassler,* ¶ 22.  As here and in

10

*Green Tree*, the loan agreement contained an acceleration clause that the creditor could choose to exercise if the borrower defaulted. *Id.* at ¶ 7.  After the borrower defaulted, the creditor repossessed the car and sent the borrower a letter stating that the borrower could "get the [car] back at any time before we sell it by paying us *the full amount you owe (not just the past due payments),* including our expenses."  *Id.* at ¶ 8.

¶ 22    The supreme court held that the creditor's claim to recover on the debt accrued when the creditor sent the letter.  *Id.* at ¶ 26.  In doing so, the court characterized the relevant inquiry as "whether [the creditor] *exercised* its option to accelerate [the borrower's] debt."  *Id.* at ¶ 23 (emphasis added).  One could argue that this statement means that an action to recover an optionally accelerated debt accrues when the creditor *actually exercises* that option, rather than when the creditor gives clear, unequivocal, and affirmative notice of its *intent* to do so.  But such a reading takes the supreme court's words out of context.

¶ 23    The *Hassler* creditor's letter stated that the debt had already been accelerated.  *Id.* at ¶ 8.  The only question before the court, therefore, was whether this statement caused the creditor's claim to

11

accrue. The supreme court had no reason to address, and did not address, the effect of a creditor's conditional statement that a debt would be accelerated at a specific future date. Moreover, in *Hassler*, the court reiterated that a claim accrues when the creditor performs an affirmative act that clearly and unequivocally evidences an "intent to accelerate" the debt. *Id.* at ¶ 26.

¶ 24 We recognize that other states have articulated slightly different tests for when a claim to recover a debt accrues. Texas courts hold that a claim "accrues only when the holder actually exercises its option to accelerate." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001). And to actually exercise an option to accelerate, a creditor must do two things: (1) give notice of its intent to accelerate; and (2) give notice of the actual acceleration. *Id.* Put differently, a creditor must give "separate notices of the intent to accelerate a debt and the actual acceleration of that debt." *Perry v. Cam XV Tr.*, 579 S.W.3d 773, 777 (Tex. App. 2019).

¶ 25 Similarly, in New York, a claim accrues when the creditor takes some affirmative action "evidencing the holder's *election* to take advantage of the accelerating provision." *Bank of N.Y. Mellon v.*

12

*Maldonado*, 97 N.Y.S.3d 162, 164 (N.Y. App. Div. 2019) (emphasis added). A creditor's statement that a debt "will be accelerated" on a specific future date if the default is not cured does not suffice for accrual because it is "'merely an expression of future intent that [falls] short of an actual acceleration' and, thus, [does] not constitute an exercise of the mortgage's acceleration clause." *Id.* at 165 (quoting *Milone v. U.S. Bank Nat'l Ass'n*, 83 N.Y.S.3d 524, 529 (N.Y. App. Div. 2018)).

¶ 26    Under either the Texas or New York test for accrual, BOA's claim may not have accrued on September 5, 2010, because both of those tests require notice of *actual* acceleration. In contrast, our supreme court requires notice of only the creditor's "*intent* to accelerate." *Hassler*, ¶ 26 (emphasis added). And we conclude that BOA made clear its intent to accelerate the debt as of September 5, 2010.

### 2. BOA Abandoned the Acceleration and then Reaccelerated the Debt

¶ 27    When BOA accelerated the debt on September 5, 2010, a claim to foreclose on the home accrued and the statute of limitations began to run. But BOA withdrew the notice of election and demand

13

for sale it had filed and recorded that withdrawal.  Notably, BOA also sent Igou a second acceleration warning letter, based on subsequent missed payments, offering him another chance to cure the default and avoid paying the entire accelerated balance of the debt.  Similar to *Peterson*, we conclude that this record supports a conclusion that BOA manifested its intent to abandon the September 2010 acceleration by clear affirmative conduct.

¶ 28    The second acceleration warning letter also set the reacceleration in motion.  Like the first letter, the second letter was a clear, unequivocal, and affirmative act evidencing BOA's intent to accelerate the debt if Igou failed to cure the default by May 14, 2016, the end of the cure period.  The evidence was undisputed that Igou failed to cure the default.  The debt was therefore reaccelerated as of May 14, 2016, and a new six-year limitations period began to run in which BOA could file a C.R.C.P. 120 motion.  Later that same year, BOA filed a notice of election and demand for sale and then the successful C.R.C.P. 120 motion at issue here.  Because BOA filed its C.R.C.P. 120 motion within six years of the May 2016 acceleration, we conclude that it was timely.

C.  *Lovell v. Goss*

14

¶ 29    We recognize that Igou argues on appeal, as he did below, that

BOA's original six-year limitations period began to run when he first

defaulted in June 2010, not when BOA first elected to accelerate

the note in September 2010.  He relies on a Colorado Supreme

Court case from 1909, *Lovell v. Goss*, 45 Colo. 304, 101 P. 72

(1909).  We find *Lovell* distinguishable and therefore inapplicable to

this case.

¶ 30    In *Lovell*, like here, several promissory notes were secured by a

deed of trust.  *Id.* at 308, 101 P. at 73.  But the terms of the *Lovell*

notes were different than those here.  The *Lovell* notes provided that

"a failure to pay said interest or any part thereof when due shall

cause this whole note to become due, payable, and recoverable at

once and the said interest to be counted as principal."  *Id.*

Similarly, the deed of trust provided that

> in case of default in any of said payments of
> principal or interest as aforesaid, or of a
> breach of any of the covenants or agreements
> herein, then and in that case the whole of said
> principal sum hereby secured, and the interest
> to the time of sale . . . shall and may at once
> become due and payable.

*Id.*

¶ 31　　After the *Lovell* borrower defaulted on the notes by failing to make an interest payment, the lender elected to accelerate the debt and foreclose on the property. *Id.* at 308-09, 101 P. at 74. But the lender did not initiate foreclosure proceedings until more than six years after the initial default. *Id.* at 311, 101 P. at 74. The supreme court held that a claim to collect the accelerated debt and foreclose on the property accrued on the date of the initial default, not the date on which the lender elected to accelerate the debt. *Id.* at 311-12, 101 P. at 74-75. It explained this holding as follows:

> It certainly cannot be said that the notes could be declared due at any date desired by the payee [lender]. Their language will not permit of such a construction. . . . According to the language of the notes, the cause of action accrued at the date they were finally due, or the date default was made in the payment of interest. In this case the payee [lender], having acted upon account of the nonpayment of interest after it became due and before the final maturity of the notes, and on account thereof, elected to declare all of them 'due, payable, and recoverable at once' as per the terms of the notes; this being the language in the notes. When, at once? Under the circumstances of this case, and in this connection, it certainly means at once 'upon default in the payment of interest thereon when due,' as stated in the notes, and we think this was the construction placed thereon by the parties at the time.

16

*Id.* at 313-14, 101 P. at 75.

¶ 32     We understand *Lovell* to mean that when the language of a note and deed of trust provides for the *automatic* acceleration of a debt upon default, a cause of action to collect the entire accelerated debt accrues on the date of that default and the statute of limitations begins to run at that time.  In contrast, there is no dispute that in this case acceleration was not automatic upon default, but instead occurred only at the creditor's option following a default.  We therefore find Igou's reliance on *Lovell* misplaced.

¶ 33     Moreover, even if Igou is correct that the original limitations period began at default in June 2010, BOA abandoned the acceleration that triggered the first limitations period.  BOA's reacceleration, based upon subsequent missed payments, triggered a new limitations period, within which BOA filed its C.R.C.P. 120 motion.

### D.  Mootness

¶ 34     BOA argues, for the first time at oral argument, that this appeal is moot because the home has already sold at a foreclosure sale.  Both BOA and Igou filed motions asking us to take judicial

17

notice of documents that they each claim are relevant to this issue. We deny both motions.

¶ 35 There is no dispute that Igou filed this action well before any foreclosure sale. Based on this fact alone, we conclude that the appeal is not moot. *See Thomas v. Lynx United Grp., LLC*, 159 P.3d 789, 792 (Colo. App. 2006) (determining that foreclosure of borrower's interest in property does not render the borrower's action challenging that foreclosure moot as long as the borrower acquiesced to the foreclosure due to the "actual or implied compulsion of a court's power" (quoting *FCC Constr., Inc. v. Casino Creek Holdings, Ltd.*, 916 P.2d 1196, 1198 (Colo. App. 1996))).

## III. Conclusion

¶ 36 The district court's judgment is affirmed.

JUDGE DAILEY and JUDGE TERRY concur.