23CA1972 Peo in Interest of ME 09-05-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1972
Arapahoe County District Court No. 21JV246
Honorable Victoria E. Klingensmith, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of M.E., a Child,

and Concerning D.E.,

Appellant.

---

ORDER AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE KUHN
Tow, J., concurs
Taubman, J., dissents

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 5, 2024

---

Ronald Carl, County Attorney, Jordan Lewis, Assistant County Attorney, Aurora, Colorado, for Appellee

Sheena Knight, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1    In this dependency and neglect action, D.E. (mother) appeals the juvenile court's allocation of parental responsibilities (APR) for M.E. (the child) to a kin placement.  We affirm and remand with directions.

## I.    Background

¶ 2    In early May 2021, mother contacted Arapahoe County Human Services Department caseworker Bridget Grimaldi and informed her that mother had called 911 after the then-four-year-old child had trouble breathing.  Emergency services took the child to the hospital, where tests revealed a low blood sugar level of forty milligrams per deciliter, indicating that she had not eaten in approximately two days.  At mother's request, the hospital discharged the child to her former foster parent.

¶ 3    That same day, an Arapahoe County Sheriff's deputy contacted Grimaldi and told her that the first responders completed a walkthrough of the home and noted that there was no food inside the house.  Grimaldi then spoke with mother, and the two agreed on a voluntary placement agreement.  However, when the two met the next day, mother's behavior became erratic, and she no longer

1

wanted to proceed with the placement. The Department filed a petition in dependency and neglect two days later.

¶ 4 While the case was pending, mother participated in visits with the child that went well, including unsupervised and consistent overnight visits. Visitation progressed to a weeklong stay in March 2023; however, after that, mother stopped participating in parenting time. The child's therapist testified that the child began to experience behavioral struggles and attributed this to anxiety about visits with her mother. Similarly to visitation, mother engaged in family therapy for five months before also stopping in March 2023. Mother did not reengage in therapy or parenting time during the remainder of the case.

¶ 5 Subsequently, the Department and guardian ad litem (GAL) requested an APR to kin providers. Mother objected, and the juvenile court conducted a hearing in October 2023, after which the court issued an order that granted an APR to the kin providers and, as relevant here, included a provision that addressed mother's compliance with components of her treatment plan. Additionally, the juvenile court required its order to be certified into a Douglas

County domestic relations case and noted that its jurisdiction would then terminate.

## II. Analysis

¶ 6    On appeal, mother contends, and the Department concedes, that the juvenile court erred by conditioning modification of the APR order on her compliance with certain components of her treatment plan.[1]  We disagree with the parties' reading of the juvenile court's order.  *See Martin v. Union Pac. R.R. Co.*, 186 P.3d 61, 66 (Colo. App. 2007) ("[A]n appellate court is not bound by concessions of the parties."), *rev'd on other grounds*, 209 P.3d 185, 186 (Colo. 2009). Thus, we affirm.

### A.    Standard of Review and Applicable Law

¶ 7    We will not disturb a juvenile court's factual findings when they are supported by the record.  *People in Interest of J.G.*, 2021 COA 47, ¶ 17.  However, whether the juvenile court applied the correct legal standard in reaching its decision is a question of law

---

[1] It is uncontested that mother objected to the proposed APR order at the hearing and requested, in its place, a resumption of visitation and a transition plan to return the child home.

that we review de novo.  *People in Interest of N.G.G.*, 2020 COA 6, ¶ 25.

¶ 8     The provisions of the Uniform Dissolution of Marriage Act (UDMA) apply when the juvenile court enters an APR order that is to be certified into a domestic relations case.  *See id.* at ¶ 26; *see also* § 19-1-104(5)-(6), C.R.S. 2024 (addressing procedure for certifying a custody award or an order allocating parental responsibilities between a district court and a juvenile court).

### B.     The Juvenile Court's Order Doesn't Limit Modification

¶ 9     Mother contends, and the Department and GAL concede, that the juvenile court's order unilaterally conditioned future modification of the APR on her compliance with certain aspects of her treatment plan.  Mother reads the order as limiting both her ability to petition for a modification and the district court from granting one.  We disagree with that reading and determine that the relevant provision of the juvenile court's order doesn't limit future modifications of parenting time but instead provides a roadmap for mother's success.  *See People v. Dyer*, 2019 COA 161, ¶ 39 (noting

that an appellate court may affirm a lower court's decision on any ground supported by the record).

¶ 10     Mother's argument is premised first on her understanding that under the juvenile court's order, she "could not petition the domestic relations court for any modification of parenting time until [mother] completed various requirements as outlined by the juvenile court." We acknowledge that the court's inclusion of this language could create confusion. But, in our view, a close examination of the language supports a different reading. The portion of the juvenile court's order that mother references says, "Prior to any modification of this order, Respondent Mother will comply with the following components of her treatment plan." The order then lists five components of the treatment plan.

¶ 11     "[W]e do not read a trial court order's statements in isolation; instead, we view them in their totality." *People v. Gonzalez-Quezada*, 2023 COA 124M, ¶ 60 n.3. Viewed in context, we read the disputed language as expressing the juvenile court's expectation that mother would comply with specific components of her treatment plan to progress in visitation. In other words, that section provided mother with steps that could help her succeed

with her rehabilitation and, potentially, with a modification of the order.

¶ 12    Mother next argues that the juvenile court also erred by restricting the district court's ability to modify the APR order later. Again, we don't read the juvenile court's order as attempting to proactively limit the district court from making a later modification in the domestic relations case.  But even if it did, as mother notes in her brief, the APR order had to be certified into a domestic relations case and the UDMA would control later modifications in the district court.  *See N.G.G.*, ¶ 26.  The UDMA makes explicit that "[e]xcept as otherwise provided in subsection (1)(b)(I) of this section, the court may make or modify an order granting or denying parenting time rights *whenever* such order or modification would serve the best interests of the child." § 14-10-129(1)(a)(I), C.R.S. 2024 (emphasis added).  Any such attempt to prospectively limit a modification would be of no effect since section 14-10-129(1)(a)(I) allows for modification of an order if it is in the child's best interest

and certain statutory criteria are met.[2]  The APR order here does not prevent the district court from modifying the APR if appropriate and if the conditions in the statute are satisfied.

¶ 13    Thus, we conclude that the APR order does not prevent mother from seeking — or the district court from granting, if appropriate — a modification to the APR.

### C.    The Douglas County Domestic Relations Case

¶ 14    Finally, we note that the record contains a November 28, 2023, minute order reading "GAL CONFIRMS APR CERTIFIED INTO DOUGLAS CASE 23DR610."  However, our review of court case management records does not reveal a case matching that number, nor do we see any indication that the domestic relations case was created.  *See People v. Sa'ra*, 117 P.3d 51, 55-56 (Colo. App. 2004) (noting we may take judicial notice of the contents of court records in a related proceeding).

¶ 15    The record shows that the juvenile court terminated its jurisdiction based on the GAL's representation that the APR had

---

[2] The statute contains limitations on motions modifying parenting time that do not appear applicable on this record.  *See* § 14-10-129, C.R.S. 2024.

been certified into a domestic relations case. And as the APR order correctly notes, it must be certified into a domestic relations case under the relevant statutes. § 19-1-104(6)(b). On remand, the juvenile court should ensure that certification of the APR order to the district court occurs.

## III. Disposition

¶ 16 The order is affirmed, and the juvenile court is directed to ensure that the parties properly certify its APR order into a domestic relations case.

JUDGE TOW concurs.

JUDGE TAUBMAN dissents.

JUDGE TAUBMAN, dissenting.

¶ 17    Because I agree with the argument of mother, D.E., and the concession by the Arapahoe County Department of Human Services that the juvenile court erred in conditioning modification of its allocation of parental responsibilities (APR) order on mother's compliance with certain components of her treatment plan in this dependency and neglect case, I respectfully dissent.

## I.    Background

¶ 18    After holding a hearing in October 2023, the juvenile court issued the APR order at issue here and directed that it be certified into a Douglas County domestic relations case.  The juvenile court's order stated, as relevant here, "Prior to any modification of this order, Respondent Mother will comply with the following components of her treatment plan."  The order then provided that those components required mother (1) to maintain individual therapy appointments and meet treatment plan goals and objectives; (2) to actively meet with the minor child's therapist and follow the treatment provider's recommendations; (3) to participate in family therapy with kin providers and the minor child; (4) to meet with the kin providers and discuss coparenting, family therapy, and

9

the minor child's needs; and (5) to sign a release of information for the court and kin providers to ensure she was in compliance with mental health objectives and treatment.

¶ 19　As the majority notes, the record does not indicate whether the juvenile court's order has been certified into a domestic relations case.

## II.　Analysis

### A.　Standard of Review and Applicable Law

¶ 20　We review de novo whether a juvenile court correctly applied the correct legal standard. *People in Interest of N.G.G.*, 2020 COA 6, ¶ 25, 459 P.3d 664, 669.

¶ 21　When a juvenile court enters an APR order in a dependency and neglect case, it must file a certified copy in the district court. § 19-1-104(6), C.R.S. 2024; *People in Interest of M.R.M.*, 2021 COA 22, ¶ 19, 484 P.3d 807, 811. When it does so, it transfers jurisdiction from the juvenile court to the district court, and the provisions of the Uniform Dissolution of Marriage Act apply. § 19-1-104(5)-(6). The district court must then treat the juvenile court's APR order "as any other decree issued in a proceeding concerning" APR. § 19-1-104(6)(b).

10

### B. Analysis

¶ 22      Mother contends, the Department concedes, and I agree that the juvenile court erred when it imposed conditions on mother as a prerequisite to seeking modifications of parenting time in the district court.

¶ 23      It is, of course, true that we are not bound by a party's concessions. *See People v. Schnorenberg*, 2023 COA 82, ¶ 40 n.1, 541 P.3d 1, 9.

¶ 24      Nevertheless, in my view, the juvenile court overstepped its bounds when it stated that before any modification of the juvenile court's order, mother must comply with five significant components of her treatment plan. Section 19-1-104(6) requires that a juvenile court's APR order certified to a district court must be treated the same as any other APR originating in the district court. However, that was not the case here.

¶ 25      The juvenile court provided that mother "will" comply with five components of her treatment plan "prior to any modification" of its order. The plain meaning of the word "will" is mandatory, not permissive. *Igou v. Bank of Am., N.A.*, 2020 COA 15, ¶ 18, 459 P.3d 776, 781. Thus, once the juvenile court's order was certified to the

11

district court, it would tie the hands of the district court by requiring it to ensure that mother had complied with these five provisions of her treatment plan.

¶ 26 The juvenile court's order thus exceeded the bounds of its authority. The statutory scheme contemplates that once a juvenile court's APR order is certified to the district court, the district court may make or modify any APR order to serve the best interests of the child. *See* § 14-10-129(1)(a)(I), C.R.S. 2024. A juvenile court may not condition a district court's ability to determine parental rights on compliance with provisions of a treatment plan in the juvenile court.

¶ 27 It may well be the case that once the juvenile court's order is certified into a district court case, the district court could impose the same or similar conditions on mother in its discretion. On the other hand, because circumstances may have changed when the district court addresses the APR order, it may well determine that different provisions should apply to mother.

¶ 28 Accordingly, I would reverse the juvenile court's conditions imposed on mother in its APR order. I would allow the part of the juvenile court's order certifying the case to the district court to

remain in effect, but simply direct that the portion of its order

imposing conditions on mother be deleted.