24CA0086 Deutsche Bank v Passmore 01-02-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0086
City and County of Denver District Court No. 22CV30322
Honorable Kandace C. Gerdes, Judge

Deutsche Bank National Trust Company, as trustee for Long Beach Mortgage Loan Trust 2004-1, asset-backed certificates, series 2004-1,

Plaintiff-Appellee,

v.

Geraldine Passmore,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE GOMEZ
Dunn and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 2, 2025

Murr Siler & Accomazzo, P.C., Jamie G. Siler, Connor M. Nybo, Denver, Colorado, for Plaintiff-Appellee

Geraldine Passmore, Pro Se

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    In this declaratory judgment action regarding a mortgage loan, defendant, Geraldine Passmore, appeals the trial court's summary judgment in favor of plaintiff, Deutsche Bank National Trust Company, as trustee for Long Beach Mortgage Loan Trust 2004-1, asset-backed certificates, series 2004-1 (Deutsche Bank).  Passmore challenges the trial court's determinations on summary judgment that (1) she was properly served with process; (2) her codefendant was properly served with process; and (3) Deutsche Bank was a real party in interest entitled to enforce the loan.  We disagree with the first and third arguments and decline to consider the second.  Accordingly, we affirm the judgment.

## I.    Background

¶ 2    In 2003, Passmore obtained a mortgage loan by executing a promissory note in favor of Long Beach Mortgage Company (Long Beach).  As security for the note, Passmore executed a deed of trust encumbering a parcel of real property she owned in Denver.  Long Beach later endorsed the original note to Deutsche Bank and assigned the deed of trust to Deutsche Bank.

¶ 3    In 2008, Passmore executed a quitclaim deed conveying the property to her friend, Ella Coney, who agreed to begin making the

1

monthly payments on the note.  Coney initially made those payments but stopped doing so in 2012, and no payments have been made since that time.  Over the ensuing years, Deutsche Bank initiated multiple foreclosure proceedings, but for various reasons it didn't pursue any of them to a final resolution.

¶ 4    In 2022, Deutsche Bank filed this declaratory judgment action against Passmore, Coney, and Coney's property management company, Coney Management & Realty.  After Deutsche Bank was unable to effectuate personal service on the defendants, the trial court granted its request to serve them by mail under C.R.C.P. 4(g).

¶ 5    Deutsche Bank later filed affidavits indicating it had served all three defendants by mail.  Passmore, appearing pro se, responded with motions arguing that neither she nor Coney had been properly served.  (No one challenged the effectiveness of service on Coney's property management company.)  The court denied the motions.[1]

¶ 6    Deutsche Bank later moved for summary judgment against Passmore, seeking declarations enabling it to foreclose on the deed

---

[1] Coney and her property management company never responded to the complaint, and a default judgment was entered against them. They are not parties to this appeal.

of trust.  The court granted the motion, declaring as a matter of law that, as relevant here,

- Deutsche Bank "is owner and lawful holder of the [l]oan" with "standing as the real party in interest to enforce the [l]oan";

- "[t]he [l]oan is a valid and enforceable contract as reflected in the [n]ote and [d]eed of [t]rust";

- "[t]he statute of limitations to enforce the [l]oan has not expired";

- "[t]he indebtedness owed under the [n]ote has not been satisfied or fully repaid"; and

- Deutsche Bank was "entitled to foreclose on the [p]roperty."

¶ 7    While Passmore's appeal was pending, the trial court granted Deutsche Bank's motion for an order authorizing a foreclosure sale

3

under C.R.C.P. 120, and the property was sold at a public auction to a third party who is not involved in this case.[2]

## II.    Mootness

¶ 8      As a preliminary matter, we consider — and reject — Deutsche Bank's contention that this appeal is moot because a foreclosure sale satisfying the loan balance has already occurred.

¶ 9      Deutsche Bank relies largely on a decision by a division of this court in *Mount Carbon Metropolitan District v. Lake George Co.*, 847 P.2d 254 (Colo. App. 1993).  In that case, the division held that a debtor's challenge to a foreclosure was mooted by the foreclosure sale and expiration of the redemption period.  *Id.* at 256-57.

¶ 10     But another division reached a different conclusion in *FCC Construction, Inc. v. Casino Creek Holdings, Ltd.*, 916 P.2d 1196, 1198 (Colo. App. 1996), concluding that a foreclosure sale on the subject lien didn't render an appeal moot despite the fact that the appellant didn't redeem the property following the sale or seek a

---

[2] We take judicial notice of the filings in this case following the notice of appeal.  *See Doyle v. People*, 2015 CO 10, ¶ 12 ("[I]t is clearly both convenient and permissible for courts to recognize their own records, often in the same or related cases, as establishing that various proceedings or actions have already taken place.").

4

stay of the sale pending the appeal. The *FCC Construction* division reviewed Colorado case law addressing the doctrine of mootness and concluded that "the test . . . is whether the action of [the appellant] was voluntary or, instead, was undertaken because of the actual or implied compulsion of a court's power." *Id.* Complying with a court's order allowing a foreclosure sale to proceed, the division held, is not a voluntary action. *Id.*

¶ 11 More recently, divisions of this court have followed the rule outlined in *FCC Construction* as being "more in harmony with Colorado mootness jurisprudence." *Thomas v. Lynx United Grp., LLC*, 159 P.3d 789, 792 (Colo. App. 2006) (acquiescing in a court-ordered foreclosure sale didn't moot an appeal); *see also Igou v. Bank of Am., N.A.*, 2020 COA 15, ¶ 35 (same).

¶ 12 We agree with these decisions and apply the rule from *FCC Construction*. And Deutsche Bank doesn't offer any analysis explaining why the rule pronounced in the *FCC Construction* line of cases should apply any differently here. Thus, we conclude that Passmore's appeal isn't moot simply because she acquiesced in the court-ordered foreclosure sale and didn't obtain a stay pending the appeal.

5

### III.  Service of Process

¶ 13    Passmore contends that the trial court erred in determining that she and Coney were both properly served with process.  We first address service of process on Passmore and then on Coney.

### A.  Service on Passmore

¶ 14    Passmore first argues that, because her name was listed at the end of the affidavit confirming service on her codefendant, Coney, the wrong person was served, meaning that jurisdiction could not be conferred over either of them.  We disagree.[3]

¶ 15    "We review de novo whether a court has personal jurisdiction over a party."  *Black v. Black*, 2020 COA 64M, ¶ 64; *cf. Goodman Assocs., LLC v. WP Mountain Props., LLC*, 222 P.3d 310, 314 (Colo. 2010) ("[W]e review de novo a trial court's decision to grant relief from a judgment . . . on the basis that it is void, e.g., for lack of personal jurisdiction over the defendant due to improper service of process.").

---

[3] We disagree with Deutsche Bank's contention that Passmore failed to preserve this issue for appeal.  She sufficiently preserved the issue by raising it in a motion to dismiss and another motion filed before she responded to the complaint.  *See Freed v. Bonfire Ent. LLC*, 2024 COA 65, ¶ 23; C.R.C.P. 12(b)(4).

¶ 16     A trial court has personal jurisdiction over a defendant only if that defendant was properly served. *United Bank of Boulder, N.A. v. Buchanan*, 836 P.2d 473, 477 (Colo. App. 1992). C.R.C.P. 4 outlines the means by which a defendant must be served with process. *Minshall v. Johnston*, 2018 COA 44, ¶ 13. In actions affecting specific property, C.R.C.P. 4(g) permits service by mail in certain circumstances. *Home Improvement, Inc. v. Villar*, 2022 COA 129, ¶ 15. Under Rule 4(g)(1), if the court determines that the filing party has applied due diligence in an attempt to obtain personal service, the court may "[o]rder the party to send by registered or certified mail a copy of the process addressed to such person at [the applicable] address, requesting a return receipt signed by the addressee only." Proof of such service may be "by a sworn or unsworn declaration showing the date of the mailing with the return receipt attached, where required." C.R.C.P. 4(h)(3).

¶ 17     When the trial court granted the motion for service by mail, it instructed Deutsche Bank to send a copy of the summons, complaint, and other relevant pleadings to all three defendants both by U.S. Mail and by certified or express delivery with delivery verification through the U.S. Post Office. Deutsche Bank later

submitted proof that it had complied with these instructions, including affidavits verifying that it had sent each defendant the pleadings by U.S. Mail and by certified mail, photocopies of the envelopes with the mailing labels, and documentation of the certified mail tracking numbers.

¶ 18     Passmore points out that the end of the affidavit affirming that Coney had been served with process lists Passmore's name instead of Coney's.  She contends that this error indicates that the wrong person was served, invalidating service on both Passmore and Coney.

¶ 19     Passmore also relies on *Havens v. Hardesty*, 600 P.2d 116 (Colo. App. 1979), for the proposition that service on the wrong person confers no jurisdiction over either the person intended to be served or the person mistakenly served.  That case involved service of process on someone who wasn't the named defendant but simply had the same name.  *Id.* at 118.  In that context, a division of this court said that "[w]here the person intended to be sued is named as defendant and service is had on a different person who is not acting for, nor an agent of, the defendant, such service confers no

8

jurisdiction over either the person named in the process or the person actually served." *Id.*

¶ 20    But the facts here are far different from those in *Havens*. Passmore and Coney are both named defendants; neither is an entirely unrelated person who was mistakenly served in the case. As Deutsche Bank explained in the trial court, the reference to Passmore in the Coney affidavit was a mere typographical error, which Deutsche Bank corrected by filing a "notice of errata" with the court. It is apparent from the affidavit and related documentation that those documents were meant to establish service on Coney, not Passmore. Coney's name is on the mailing label and is referenced throughout the rest of the affidavit. Passmore's name listed at the very end, in a sentence asserting that the facts previously stated establish effective service of process, is evidently a typographical error — not a statement one would reasonably interpret to mean the entire set of documents was actually intended to serve Passmore, rather than Coney.

¶ 21    Moreover, and most critically, Passmore doesn't contend that there were errors in the separate affidavit and other documentation reflecting service on *her*. Although she contends that more evidence

9

was needed to establish that the documents were actually placed in and received through the mail, Deutsche Bank sufficiently complied with Rule 4 by providing an affidavit showing the date the pleadings were sent by U.S. Mail, postage prepaid, and by certified mail and attaching copies of the envelopes and tracking labels. And, notably, Passmore doesn't contend that she never received the documents mailed to her.

## B. Service on Coney

¶ 22 Relatedly, Passmore argues, based on the same typographical error in the Coney affidavit, that Coney wasn't properly served. Passmore also argues that the "notice of errata" didn't correct the error and that the trial court violated a procedural order in its entry of default judgment against Coney. We don't consider these issues because Passmore lacks standing to raise them.

¶ 23 "Standing is a jurisdictional prerequisite to any appeal." *In re Marriage of Shapard*, 129 P.3d 1007, 1009 (Colo. App. 2004). "A party does not have standing to appeal the portions of a judgment involving only the interests of a nonappealing party." *Id.*

¶ 24 Whether Coney was properly served, and thus whether the court properly exercised personal jurisdiction over her, is an issue

10

that involves only Coney's interests.  The same is true of the other procedural issues relating to the judgment entered against Coney.  And Coney hasn't appealed that judgment.  Passmore therefore lacks standing to appeal these issues on Coney's behalf.  *See id.*

## IV.    Entitlement to Enforce the Note

¶ 25     Passmore also contends that the trial court erred in ruling on summary judgment that Deutsche Bank was the real party in interest entitled to enforce the loan.  We disagree.

¶ 26     We review de novo a grant of summary judgment.  *Univ. of Denver v. Doe*, 2024 CO 27, ¶ 7.  Applying the same standard as the trial court, "we must 'determine whether a genuine issue of material fact existed and whether the [trial] court correctly applied the law.'"  *Poudre Sch. Dist. R-1 v. Stanczyk*, 2021 CO 57, ¶ 12 (quoting *City of Fort Collins v. Colo. Oil & Gas Ass'n*, 2016 CO 28, ¶ 9).

¶ 27     At summary judgment, "[t]he moving party bears the initial burden of showing no genuine issue of material fact exists."  *Westin Operator, LLC v. Groh*, 2015 CO 25, ¶ 20.  Once this burden is met, the nonmoving party bears the burden of "establish[ing] a triable issue of fact."  *Id.*  The nonmoving party may not rest on the allegations made in the pleadings but, instead, must provide facts

11

"by affidavit or otherwise" to show that there is a triable issue. *Han Ye Lee v. Colo. Times, Inc.*, 222 P.3d 957, 960 (Colo. App. 2009). And pro se parties are bound by the same procedural rules that apply to attorneys. *Cornelius v. River Ridge Ranch Landowners Ass'n*, 202 P.3d 564, 572 (Colo. 2009).

¶ 28     As best as we can ascertain,[4] Passmore argues that the trial court's ruling was erroneous because (1) Deutsche Bank didn't present sufficient evidence that it was a holder of the debt; (2) there was a break in the chain of title of the mortgage; and (3) Deutsche Bank didn't comply with certain provisions of the Colorado Fair

---

[4] "Pleadings by pro se litigants must be broadly construed to ensure that they are not denied review of important issues because of their inability to articulate their argument like a lawyer." *Jones v. Williams*, 2019 CO 61, ¶ 5.

12

Debt Collection Practices Act.[5]  We address each of these arguments in turn.[6]

### A.  Holder of the Note with the Right to Foreclose

¶ 29  Passmore argues that Deutsche Bank didn't sufficiently document that it was a holder of the note with the right to enforce the debt.  We disagree.

¶ 30  "Colorado foreclosure law allows a holder of an evidence of debt to foreclose upon breach of the terms of the deed of trust." *Edwards v. Bank of Am., N.A.*, 2016 COA 121, ¶ 15.  "A 'holder of an evidence of debt' is defined as 'the person in actual possession of or person entitled to enforce an evidence of debt.'"  *Id.* (quoting § 38-38-100.3(10), C.R.S. 2024).  An "[e]vidence of debt," in turn, is

---

[5] To the extent that Passmore attempts to raise any other issues, they are not sufficiently developed for us to consider them.  *See Frisco Lot 3 LLC v. Giberson Ltd. P'ship, LLLP*, 2024 COA 125, ¶ 95 n.15.

[6] We disagree with Deutsche Bank's contention that Passmore didn't preserve these three arguments in the summary judgment proceedings.  *See Freed*, ¶ 23.  However, Passmore raises a fourth argument that she did not raise in response to the summary judgment motion: application of the statute of limitations.  Because Passmore didn't respond to Deutsche Bank's request for summary judgment on that issue, she waived any objection to the court's ruling on it.  *See Gestner v. Gestner*, 2024 COA 55, ¶ 27 (declining to consider an argument not raised in the trial court).

"a writing that evidences a promise to pay or a right to the payment of a monetary obligation, such as a promissory note." § 38-38-100.3(8).

¶ 31    To show it has standing to foreclose, a holder may file the "original evidence of debt, including any modifications to the original evidence of debt, together with the original indorsement or assignment thereof, if any, to the holder of the evidence of debt" and an original or certified copy of the "recorded deed of trust securing the evidence of debt." § 38-38-101(1)(b)-(c), C.R.S. 2024.

¶ 32    In compliance with these requirements, Deutsche Bank submitted uncontroverted evidence that it was the holder of the note and the assignee of the deed of trust. First, Deutsche Bank provided the original note, which on the back contained a notation endorsing it to Deutsche Bank. Second, Deutsche Bank provided copies of the recorded deed of trust and a recorded document evidencing the assignment of the deed of trust from Long Beach to Deutsche Bank. And third, Deutsche Bank provided an affidavit of a senior loan analyst for the loan servicer, averring that Deutsche Bank was the present owner and holder of the original note and that, as assignee, it was the beneficiary of the deed of trust.

14

¶ 33    This documentation, which Passmore didn't contradict with evidence of her own, was sufficient to show that Deutsche Bank was a holder of the note with the right to foreclose on it.[7]

### B.    Chain of Title

¶ 34    Passmore next argues that a few alleged discrepancies in the documentation chronicling changes in the loan servicers evidenced a break in the chain of title of the mortgage.  She argues that, due to these alleged discrepancies, there is not a clear, unbroken chain of transfers from the original lender, Long Beach, to Deutsche Bank, and therefore Deutsche Bank couldn't establish itself as a holder of the loan with the right to enforce it.

¶ 35    This argument is unavailing, however, because Long Beach and Deutsche Bank were holders of the loan — not servicers of it. Loan servicers are separate entities that handle the day-to-day management of a loan, such as collecting payments, on behalf of the holder.  *See* § 38-40-103.5(1)(e)(I), C.R.S. 2024.  In contrast, a

---

[7] We reject Passmore's argument that Deutsche Bank wasn't entitled to enforce the note because it wasn't the holder at the time a prior foreclosure action was initiated in 2012.  What matters here is that Deutsche Bank showed it was the holder of the note when it initiated the present action.

holder of the loan, such as Deutsche Bank or, formerly, Long Beach, is the owner of the loan and has the right to receive the payments made by the debtor and collected by the servicer. *See* § 38-40-103.5(1)(c). Thus, any potential infirmities in the transfers between *servicers* of the loan don't contradict the evidence that Deutsche Bank was the *holder* of the loan.

## C.  Colorado Fair Debt Collection Practices Act

¶ 36  Finally, Passmore argues that Deutsche Bank's efforts to enforce the note didn't comply with two provisions of the Colorado Fair Debt Collection Practices Act. *See* § 5-16-111(2), (3), C.R.S. 2024.

¶ 37  The first cited subsection, section 5-16-111(2), applies to the actions of "[a] debt collector or collection agency." The statute defines a "[d]ebt collector" as "any person employed or engaged by a collection agency to perform the collection of debts owed or due or asserted to be owed or due to another." § 5-16-103(9), C.R.S. 2024. It defines a "[c]ollection agency" as a "[p]erson who engages in a business the principal purpose of which is the collection of debts" or a "[p]erson who . . . [r]egularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or

16

due another"; "[t]akes assignment of debts for collection purposes"; "[d]irectly or indirectly solicits for collection debts owed or due or asserted to be owed or due another"; or "[c]ollects debt for the department of personnel." § 5-16-103(3)(a). Notably, the definition of a "[c]ollection agency" expressly excludes "[a]ny officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." § 5-16-103(3)(b)(I).

¶ 38 The other cited subsection, section 5-16-111(3), applies to the actions of a "debt buyer." The statute defines this term as "a person who engages in the business of purchasing delinquent or defaulted debt for collection purposes, whether it collects the debt itself, hires a third party for collection, or hires an attorney for litigation in order to collect the debt." § 5-16-103(8.5).

¶ 39 Through this action, Deutsche Bank wasn't attempting to collect a debt on behalf of another party; rather, it was the creditor itself. It does not, therefore, qualify as a debt collector, a collection agency, or a debt buyer within the meaning of this statute. Thus, the provisions of section 5-16-111(2) and (3) didn't apply.

¶ 40 Because Deutsche Bank provided sufficient documentation to show that it was the holder of the original note and the assignee of

17

the deed of trust and Passmore hasn't raised a genuine issue of material fact, the trial court didn't err in determining that Deutsche Bank was a real party in interest entitled to foreclose on the note.

## V. Disposition

¶ 41    The judgment is affirmed.

JUDGE DUNN and JUDGE TAUBMAN concur.